Terry **CHANLEY**, Appellant,

v.

**STATE** of Indiana, Appellee.

No. 87S00–8909–CR–594.

Supreme Court of Indiana.

Dec. 20, 1991.

Robert Canada, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Terry Chanley was convicted by jury of Escape, *Ind.Code Ann.* § 35–44–3–5 (West 1986), Theft, *Ind.Code Ann.* § 35–43–4–2 (West 1986), and Robbery, *Ind.Code Ann.* § 35–42–5–1 (West 1986). He was sentenced to ten years for escape, two years for theft, and 30 years for robbery. He was also found to be an habitual offender, and each sentence was enhanced by 30 years. This case is before us on direct appeal pursuant to Ind.Appellate Rule 4(A)(7) for the enhanced 60 year sentence on the robbery conviction. We affirm the convictions for escape, theft, and robbery, and the habitual offender finding.

Chanley raises the following issues:

(1) Whether the trial court erred in refusing to grant a challenge for cause;

(2) Whether the trial court erred in denying Chanley's motion in limine relative to his conviction and escape from a Kentucky penal facility;

(3) Whether the trial court erred in refusing to instruct the jury on the lesser included offense of conversion;

(4) Whether exhibit 33, relating to Chanley's prior convictions, was improperly certified;

(5) Whether Chanley was properly found to be an habitual offender when one of four prior felonies alleged did not meet the statutory criteria; and

(6) Whether he was properly sentenced.

The facts are as follows. On December 12, 1987, Chanley escaped from the Blackburn Correctional Complex in Lexington, Kentucky. On January 8, 1988, Indiana State Police trooper O'Daniel was travelling westbound on I–64 near the Lynnville exit when activity on the other side of the interstate attracted his attention. The trooper crossed the median, and observed two men standing in the snow. One of them, whom the trooper later learned to be Carl Cole, appeared to be highly intoxicated as the trooper observed him fall on his face in the snow. The other, who also appeared intoxicated, was Chanley. The trooper then observed a small car down in the roadside ditch, and in it, he found a third person, James Lynch, who was also obviously intoxicated. He led Lynch back to where the others were standing.

After the three men agreed that Cole had been driving, the trooper informed them that they were under arrest and directed them to get into his patrol car. The trooper attempted to obtain identification information from the men, and after observing their demeanor, he began to suspect they were being deceptive. Feeling certain that Cole could not pass a blood alcohol test, he advised the men that Cole would have to go to jail because he had been driving, but that if everything else was all right, Lynch and Chanley could call someone to pick them up at the jail, rather than being locked up.

While still in the police vehicle, Cole advised the trooper that he needed to relieve himself, got out of the car, and again fell down in the snow. As the trooper assisted Cole, Chanley became agitated, leapt into the driver's seat of the patrol car, and drove away. The trooper was able to partially enter the car by lunging through the open driver's side door, grabbing the steering wheel, and scuffling with Chanley, but, eventually he fell out of the car. A few moments later, he observed the car stuck in the median 20 or 30 yards away and saw Chanley running from the car.

Later in the day, someone stole a truck belonging to E & M Coal in Lynnville, Indiana, which was recovered a short time later in Crawford County. Footprints found in the snow where the truck was stolen matched those found where the truck was recovered. Police found Chanley, wearing shoes which matched both sets of footprints, in a culvert near where the truck had been abandoned. A set of keys to the stolen truck was also found in the culvert. Chanley gave a statement admitting that he had taken the trooper's car and had fled on foot after it stopped in the median.

### Challenge of Juror for Cause

At trial, Chanley challenged for cause prospective juror Hansen because of comments she made during voir dire relating to a person's consumption of alcoholic beverages. Juror Hansen indicated that although she didn't really disapprove of drinking, she did not approve of drinking to excess, and although she would try very hard for her feelings concerning alcohol not to enter into her judgment, she could not honestly say that they would not affect her judgment in a close case. She stated that unless the drinking were a major issue in the case, the consumption of alcohol would not have any bearing on her decision-making process. She was absolutely certain that in the case of a person charged with theft, she would not vote for a verdict of guilty unless she were convinced that the person had in fact committed the act, even if the person had been drinking. She

did not feel that she was biased or prejudiced in any way against Chanley, and believed that she would be able to render an impartial verdict based upon the law and the evidence as it was presented to her in the courtroom and as she was instructed by the court.

Chanley's challenge for cause to juror Hansen was denied, so he used a peremptory challenge to excuse her. Eventually, Chanley exhausted his peremptory challenges and requested an additional one to challenge another juror. The court denied the motion.

Chanley urges that his challenge for cause of prospective juror Hansen should have been sustained because she was biased and prejudiced against him as a result of his consumption of alcohol. Chanley relies on *Swigart v. State* (1879), 67 Ind. 287, and *Campbell v. State* (1989), Ind., 547 N.E.2d 843. *Swigart* involved a prosecution for keeping a licensed saloon in a disorderly manner and a juror who stated his belief that a person engaged in the sale of liquor was immoral. Thus, in *Swigart,* the trial was one where the sale of liquor was an important issue and the juror professed a firm aversion to those in the defendant's class on moral grounds. In *Campbell,* the prospective juror had "strong unyielding" opinions regarding criminals, including the notion that they should be excommunicated and exiled to a distant land. He had also been involved in circulating a petition to have all criminals expelled from the city limits of Gary. This Court concluded that although the juror said that he was willing to give the defendant a fair trial and listen to the evidence this "was less than convincing considering his very strong personal feelings and philosophies on the subject." 547 N.E.2d at 844.

We find this case distinguishable from *Swigart* and *Campbell.* Here, consumption of alcohol was not an element of the crimes charged and was not a significant issue at the trial. When the prosecutor pointed out that none of the elements of the crimes charged related to alcohol, Juror Hansen stated that she could fairly and impartially judge the evidence. We find nothing in the record to suggest that Hanson's opinions regarding consumption of alcohol approach the level of the "strong unyielding" opinions expressed by the juror in *Campbell.* She informed the court that she would not vote for a verdict of guilty unless she were convinced beyond a reasonable doubt that Chanley had in fact committed the acts charged, and that she would be able to render an impartial verdict based on the law and the evidence. The granting or denial of a challenge for cause is committed to the sound discretion of the trial court, and we reverse only upon an abuse of that discretion. *Woolston v. State* (1983), Ind., 453 N.E.2d 965, 967. Here, the trial judge was in the best position to observe Hansen and to judge the credibility of her statements. We do not discern any abuse of discretion in this case.

### *Admission of Evidence Relating to Prior Criminal Activity*

Chanley argues that the trial court erred in denying his motion in limine which, if granted, would have precluded the prosecutor from soliciting evidence of Chanley's conviction and escape from the Kentucky penal facility. The trial court ruled that evidence of Chanley's escape from the Kentucky penal facility was admissible to show motive. Chanley claims that because motive was not at issue during the trial—Chanley did not contest that he had committed the acts alleged, but only contested whether he was legally in police custody at the time he committed them—evidence of motive was not relevant.

Although, generally, evidence of other crimes committed by a defendant is irrelevant and prejudicial and, therefore, not admissible, *Biggerstaff v. State* (1977), 266 Ind. 148, 152, 361 N.E.2d 895, 897, evidence of other crimes committed by a defendant may be admissible as proof of the defendant's motive. *Webb v. State* (1983), Ind., 453 N.E.2d 180, 187, *cert. den.* 465 U.S. 1081, 104 S.Ct. 1449, 79 L.Ed.2d 767. Moreover, motive is always relevant in the proof of a crime. *Id.*

Chanley was arrested for public intoxication, a relatively minor charge, and had been advised by trooper O'Daniel that he might be released without charges if everything were in order. Logically, there would seem to be no reason for Chanley to drive away in the trooper's car and to steal another vehicle, unless the jury also knew that a search for outstanding warrants would reveal he was an escapee. Therefore, his status as an escapee made his subsequent actions more understandable for the jury. In addition, evidence of his status was relevant to his intent to do whatever was necessary to remain free, including the taking of two vehicles, and to his intent to deprive the owners of the vehicles of the use and value of the vehicles he took. We conclude that the court properly admitted evidence of his Kentucky incarceration and escape therefrom.

*Instructions on Lesser Included Offense*

■ Chanley argues that the trial court erred in refusing to read to the jury his tendered instructions on conversion as a lesser included offense of theft and robbery. Chanley was convicted of theft in connection with taking the truck which belonged to E & M Cole, and of robbery in connection with taking trooper O'Daniel's car. He claims he was entitled to have the jury instructed on conversion, *Ind. Code Ann.* § 35-43-4-3 (West Supp.1990). We do not agree.

■ In determining whether an instruction on a lesser included offense should be given, we conduct a two-step inquiry. *Jones v. State* (1982), Ind., 438 N.E.2d 972, 974. First, we determine whether the lesser offense is inherently or factually included in the greater offense by looking at the statutes and the charging document. *Whipple v. State* (1988), Ind., 523 N.E.2d 1363, 1372. An offense is a lesser included one if all the statutory elements of the lesser offense are part of the statutory definition of the greater offense. *Jones v. State* (1988), Ind., 519 N.E.2d 1233, 1234-35. Chanley is correct that conversion can be a lesser included offense of theft, *Zavesky v. State* (1987), Ind., 515

N.E.2d 530, and of robbery, *Rogers v. State* (1979), 272 Ind. 65, 74, 396 N.E.2d 348, 354.

The second part of the test is to determine whether there is evidence before the jury that the lesser included offense was committed, but that the greater one was not. This test hinges on whether a serious evidentiary dispute exists with respect to the element which distinguishes the greater from the lesser offense. The evidence must be such that the jury can conclude that the lesser offense was committed and the greater offense was not. *Lynch v. State* (1991), Ind., 571 N.E.2d 537, 539. Here, the element which distinguishes the greater from the lesser is whether Chanley intended to deprive the owners of the use of their vehicles permanently or for an indefinite period of time.

■ Chanley claims that the fact that he abandoned the truck and police car near the location where he had taken them shows his lack of intent to deprive. We do not find this proposition persuasive. He simply abandoned the truck three counties distant from where he had taken it. Even if Chanley did not intend to retain permanent possession of the truck, clearly, he intended to drive it for a sufficient time and sufficient distance to make his getaway, that is, for as long as necessary, or indefinitely. Transportation of the property a short distance is sufficient to sustain a conviction for robbery. *Hunter v. State* (1986), Ind., 492 N.E.2d 1067, 1071. Similarly, Chanley points to no evidence of any intent on his part to return trooper O'Daniel's car, other than the fact that he abandoned it not far from the place from where he had taken it. Although it is true that he did not drive the car much distance, that is because the car became stuck in the snow. Chanley seemingly wanted an opportunity to ask the jury to believe that he intended, at some future time, to return the stolen vehicle to a state police post. We do not find any "serious evidentiary dispute" relating to Chanley's intent to deprive, and find it inconceivable that he had any intention to return either vehicle. Accordingly, we find no error. *Maisonet v. State* (1983), Ind., 448 N.E.2d 1052, 1055.

## Habitual Offender Finding

Chanley asserts that the habitual offender finding must be vacated because of errors in the admission of certain evidence. During the habitual offender phase of the trial, the State offered evidence of four prior felony convictions.

■ To prove conviction no. 3, the State was allowed to admit, over Chanley's objection, exhibit 33. The exhibit purported to be certified pursuant to Indiana Trial Rule 44(A)(1). The certification referred to "foregoing" documents, but was stapled to the top of the exhibit and, hence, nothing was "foregoing." Chanley relies on *Eldridge v. State* (1977), 266 Ind. 134, 139, 361 N.E.2d 155, 158, as support for the proposition that the certification was a nullity and, therefore, exhibit 33 was improperly admitted. The State admits that *Eldridge* holds that a certification page like the one here does not certify to papers which follow, but urges us to abandon this rule. We have already done so. In *Miller v. State* (1990), Ind., 563 N.E.2d 578, 584, we held that admission of documents is not error where the placement of the certificate on top of the papers of the exhibit, rather than at the back, "in no way causes any confusion as to the authenticity of the papers," and we expressly overruled *Eldridge* to the extent that it was interpreted to the contrary.

Here, the certification states that it certifies copies of the "Indictment, Trial Order and Judgment and Sentence on Terry Wayne Chanley on Indictment # 87–CR–033." Each of the documents attached refers to the same indictment number. Under these circumstances, we discern no confusion as to the authenticity of the documents. Accordingly, exhibit 33 was properly admitted.

■ Chanley also contends that because, in relation to one another, the four felonies did not each meet the sequential requirements of the habitual offender statutes, and because a general verdict form was used, that the finding must be reversed.

In *Richards v. State* (1989), Ind., 535 N.E.2d 549, the same issue was raised and decided in a manner adverse to Chanley's position. In *Richards*, the issue was whether reversal was required where the State presented properly admitted evidence of three valid felonies but where, in relation to one another, not each was in proper sequence because one of the three felonies had taken place prior to sentencing on one of the others. As pointed out by Chief Justice Shepard in his concurring opinion, the felony convictions in *Richards* were merely "out of sequence" but were otherwise admissible. 535 N.E.2d at 551. *Nash v. State* (1989), Ind., 545 N.E.2d 566, 568, cited by Chanley, does not apply here because that case involved admission of a felony conviction which should not have been considered by the jury for any purpose.

Here, where it is clear that the State proved four valid felony convictions, each of which was admissible, and the jury was properly instructed about the sequence required by statute, we discern no error. There was sufficient evidence before the jury upon which to base the finding that Chanley was an habitual offender.

## Propriety of Sentence

■ Finally, Chanley claims that the trial court did not have the authority to order that the sentence for the crimes he committed in Indiana be served after any sentence imposed in Kentucky. (This would have been the sentence remaining at the time he escaped plus any additional time imposed as a result of his escape).

In support of his claim, Chanley cites *Seay v. State* (1990), Ind., 550 N.E.2d 1284. In *Seay*, we held that where the State could have joined four charges of selling a controlled substance into a single trial, but chose to proceed to trial on the first two charges in one court and the second two charges in another court at a later time, the second trial court did not have the authority to order the sentences on the second charges to be served consecutively to the sentence on the first charges. We conclude that *Seay* is not applicable because the Indiana charges and the Kentucky charges against Chanley could not

have been tried together. The trial court did not err in ordering the sentence for the Indiana crimes to be served consecutively to any time Chanley had yet to complete in Kentucky.

In view of our conclusions, we need not address the remaining issues raised by Chanley.

## CONCLUSION

Accordingly, Chanley's convictions for escape, theft and robbery and the underlying sentences imposed with respect to each conviction are affirmed. The habitual offender finding and the penalty enhancement imposed as a result of that finding are also affirmed.

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

DeBRULER, J., concurs and dissents, with separate opinion.

DeBRULER, Justice, concurring and dissenting.

I respectfully concur with the majority in affirming the three convictions and the underlying sentences imposed with respect to each.

I respectfully dissent from the majority opinion wherein it affirms the verdict of the jury finding appellant to be a habitual offender. I remain convinced that this Court's holding in *Miller v. State* (1981), 275 Ind. 454, 417 N.E.2d 339, commands reversal in circumstances like this. *See also, Richards v. State* (1989), Ind., 535 N.E.2d 549, 551 (DeBruler, J., dissenting).

A thirty year addition to a felony sentence, because the person to be sentenced has accumulated two prior unrelated felony convictions is a large dose of penal medicine. It is so large that the legislature has mandated that the defendant is entitled to a trial by jury on a charge of being a habitual offender where the standard of proof is the very highest, i.e., beyond a reasonable doubt. This is the protection provided our most sacred rights. In so doing the legislature has mandated that the determination of habitual offender have the

same integrity as the determination of guilt itself. Indeed, the defendant is even entitled to an instruction at the trial on habitual offender allegations informing the jury of its constitutional power under Article 1, Section 19 of the Indiana Constitution to determine the law as well as the facts. *Clark v. State* (1990), Ind., 561 N.E.2d 759.

When, as here, the prosecution states four specific prior convictions in its charge, and at trial makes proof of each, and the jury takes that charge of four and that proof of four to the jury room, and emerges with a general verdict that the defendant is a habitual offender, such verdict may rest upon any one of six separate combinations of convictions. Because two of the convictions are not in proper sequential relationship, one of the six combinations does not provide a factual basis for the jury verdict. Where is the assurance that such is not the case? If there is no instruction expressly prohibiting the combination of the two, or there is no special verdict form, as there is not in this case, then that assurance resides if at all in the general instructions defining habitual offender status and its constituent elements, and the ability of the jury to carefully apply the criteria in them.

In *Miller v. State, supra,* two of four alleged prior convictions were improper because the defendant had not yet been sentenced on them. The prosecution sought to prove all four, and the possibility of all four was carried to the jury room. A general verdict was returned. In reversing, this Court said:

> "Notwithstanding that competent evidence was admitted to support a finding that the defendant 'had accumulated two (2) prior unrelated felony convictions,' under this state of the record, it can not be discerned which of the four alleged prior convictions provided the factual basis for the jury's determination."

*Miller*, 275 Ind. at 460, 417 N.E.2d at 343. The state of the record in *Miller*, included general instructions defining habitual offender status and its elements. It may properly be deduced that such general jury instructions did not satisfy this Court that

the jury rejected the two invalid prior convictions, though the invalidity of the convictions was discernible by the jury under its instructions. It therefore follows logically, that the general instructions defining habitual offender status and its constituent elements in the case at bar do not provide an adequate assurance that the jury rejected the invalid combination of convictions. This verdict finding appellant to be a habitual offender is tainted and I would set it aside.