Adam SANDILLA, Kenneth C. Giertz, Thomas Baljak, Appellants–Defendants,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A03–9102–CR–42.

Court of Appeals of Indiana, Third District.

Dec. 8, 1992.

Transfer Denied Jan. 20, 1993.

William L. Touchette, Merrillville, for appellant Thomas Baljak.

Martin H. Kinney, Dan DeArmond, Merrillville, for appellant Adam Sandilla.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for the State.

GARRARD, Judge.

## I. Facts and Procedural History

Defendants appeal from their convictions for involuntary manslaughter. We reverse.

On the evening of May 19, 1989, a bachelor party was held for Thomas Baljak (Baljak) in Hobart, Indiana, and was attended by many of his friends, including Kenneth C. Giertz (Giertz). After the party, Baljak, Giertz, and several others drove to a bar to continue socializing. Adam Sandilla (Sandilla), who was acquainted with Giertz, showed up at the bar after he and some friends had been bowling.

At the bar, Giertz and Miguel Cantero (Cantero) argued on two different occasions, and Cantero pulled a knife on Giertz and threatened him. One witness, Jesus Arrequin, testified that he saw Cantero get punched in the stomach in the bar, and saw him on the floor, but could not identify who did it. Other witnesses testified that Cantero and Giertz wrestled, but no blows or knockdowns took place. After his second encounter with Giertz, Cantero left the bar but was followed by others, including Giertz and Sandilla. Giertz, Sandilla, and DeForest Lipke (Lipke), proceeded down an alley after Cantero and caught up with him near an incinerator where Giertz and Cantero wrestled. Sandilla kicked Cantero while Giertz had him on the ground and was on top of him. Lipke apparently stopped the fight and Lipke, Giertz, and Sandilla returned to the bar where Giertz told others he had beaten Cantero.

Baljak heard about Giertz and Cantero, and proceeded outside the bar. He spoke with Giertz who had returned from the alley incident. One witness, Chondra Solivios, testified that Giertz told her that when he told Baljak that he beat Cantero, Baljak said, "Not good enough, he's still walking." Baljak and Greg Morehouse (Morehouse) then jogged down the alley where they encountered Cantero almost at the end of the alley. Baljak struck Cantero, knocking him to the ground. Baljak and Morehouse then returned to the bar.

Cantero was subsequently discovered lying unconscious in a nearby parking lot. He was taken to the hospital and operated on for head injuries. He died from the injuries five days after he was admitted to the hospital. On July 13, 1989, Baljak, Giertz, and Sandilla (defendants) were charged by indictment with involuntary manslaughter. A jury trial commenced on July 30, 1990. Three medical experts had three different opinions on the nature of the injuries that killed Cantero. Dr. John Pless thought Cantero's death was caused by two main injuries, a contrecoup injury to the back of the head and a direct (blunt) force injury which fractured the right side of the skull.[1] Dr. Robert Kirschner also thought Cantero's death resulted from two primary injuries, contrecoup injuries to the

---

1. A contrecoup injury is an injury that occurs when the head is in motion and slams into a stationary object, such as occurs when one falls and hits the ground. To the contrary, a direct (blunt) force injury occurs when an object is in motion and hits the head while it is stationary (R. pp. 1279–1282, 1286).

back and right side of the head. Dr. Charles Chuman believed one contrecoup injury to the back of the head caused the skull fracture and head injuries. On August 11, 1990, the jury convicted defendants of involuntary manslaughter and each now appeals.

## II. Issues

Defendants raise the following issues on appeal:

A. Whether the trial court erred in refusing to give defendants' lesser included offense instruction on the offense of battery.

B. Whether the trial court erred in instructing the jury on aiding, inducing, and causing an involuntary manslaughter.

C. Whether the evidence was sufficient to prove that defendants were guilty of involuntary manslaughter.

Because we reverse on the basis of the first issue, we decline to address issues B and C other than to note that defendants fail to demonstrate reversible error as to both issues.

## III. Discussion and Decision

In this case, defendants submitted an instruction on battery as a lesser included offense of involuntary manslaughter. However, the instruction was refused by the trial court on the basis that the state had the right not to charge a lesser offense because the instruction could lead to a compromise jury verdict. Defendants contend they were entitled to the lesser included offense instruction on battery. We agree.

 It is well settled that Indiana law provides a two-part inquiry for determining whether an instruction on a lesser included offense should be given. First, we determine if the lesser included offense is inherently or factually included in the greater offense by looking at the relevant statutes and the charging document. *Aschliman v. State* (1992), Ind, 589 N.E.2d 1160, 1161, *citing Chanley v. State* (1991), Ind., 583 N.E.2d 126, 130; *Lynch v. State* (1991), Ind., 571 N.E.2d 537, 538. Then we determine if there is evidence before the jury

that the lesser included offense was committed, but the greater one was not. *Aschliman*, 589 N.E.2d at 1162; *Chanley*, 583 N.E.2d at 130; *Lynch*, 571 N.E.2d at 539.

 Under the first part of the inquiry, an offense is lesser included if all the statutory elements of the lesser offense are part of the statutory definition of the greater offense or if the charging instrument, in alleging the means used to commit the crime charged, includes all of the elements of the lesser offense. *Lynch*, 571 N.E.2d at 538. In this case, battery is an inherently included offense of involuntary manslaughter. For example, the charging instrument in this case charged that the Defendants did "... kill MIGUEL CANTERO while committing or attempting to commit the crime of Battery...." (R. p. 46). Furthermore, the statute under which Defendants were charged and convicted states:

A person who kills another human being while committing or attempting to commit:

. . . . .

(3) Battery; commits involuntary manslaughter, a class C felony.

IC 35-42-1-4(3). From the wording of the charging document and the statute, it is clear that battery is an inherently included offense of the involuntary manslaughter charge in this case.

The second part of the inquiry, to determine if there is evidence before the jury that the included offense was committed but the greater one was not, is designed to determine whether a lesser included offense instruction is warranted by the evidence, and hinges on whether a serious evidentiary dispute exists respecting the element which distinguishes the greater and lesser offenses. *Aschliman*, 589 N.E.2d at 1162; *Lynch*, 571 N.E.2d at 539; *Swafford v. State* (1981), Ind., 421 N.E.2d 596, 603; *Roddy v. State* (1979), 182 Ind. App. 156, 394 N.E.2d 1098, 1112.

 In this case, the state contends that the second part of the inquiry is not met because there is no dispute as to the ele-

ment distinguishing the lesser offense from the greater offense, Cantero's death. Although we agree that there is no dispute that Cantero died, we do not agree that "death" is the sole element which distinguishes involuntary manslaughter from battery. Instead, the charging document and the involuntary manslaughter statute in this case reveal that the distinguishing element in this case is "kills." *See* IC 35–42–1–4(3). The lesser included offense (battery) must "kill" another human being in order to constitute involuntary manslaughter. In this context, "kill" means to deprive of life or destroy the life of a person; homicide. *See* BLACK'S LAW DICTIONARY 1009 (4th ed. 1951). We conclude that "kills" inherently contains a "causal" element. As a result, the distinguishing element was not only Cantero's death, but whether the defendants' alleged batteries "caused" his death i.e., whether the batteries "killed" him. *See Schneider v. State* (1989), Ind.App., 538 N.E.2d 13, 15 (holding that defendant convicted of involuntary manslaughter was not entitled to a lesser included offense instruction on battery where there was no substantial dispute as to the "cause" of death, "homicide" being the distinguishing feature between the offenses of battery and involuntary manslaughter). Accordingly, we hold that to be entitled to a lesser included offense instruction of battery in an involuntary manslaughter case, there must either be a serious evidentiary dispute regarding whether the victim actually died [2] or wheth-

er the battery "caused" the victim's death. Otherwise, the trial court is not compelled to give a lesser included offense instruction.

In this case, there was a serious evidentiary dispute regarding whether the alleged batteries committed by defendants "killed" Cantero (or "caused" Cantero's death). A review of the record reveals evidence that Cantero was found unconscious in a parking lot, about 146 feet away from where he was last hit by Baljak and went down. At the hospital, Cantero's blood alcohol content was measured at .225, and he had no observable external injuries, other than a cut lip. Defendants denied that Cantero died from injuries resulting from the alleged batteries and contended that Cantero's death could have been caused by his own accidental fall. Similarly, Dr. Chuman, the neurosurgeon who operated on Cantero at the hospital, testified that he believed Cantero suffered only one fatal contrecoup injury to the back of his head and that Cantero's injury was the "... typical fall down and hit your head when you're drunk injury (R. pp. 2056–2057)." At the time defendants' lesser included offense instruction was tendered, there was evidence from which the jury could have found them guilty of battery, but not of involuntary manslaughter.[3] We conclude that the second inquiry as to whether a lesser included offense instruction should have been given has also been met.

**2.** *See Swafford,* 421 N.E.2d at 603. In *Swafford,* our supreme court stated that the element which distinguishes murder from the lesser included offense of battery is the degree of harm, death, to the victim. In that case, the defendant contended that there was no direct evidence that the victim died from a gunshot to the head inflicted by the defendant where the victim was pronounced brain dead, but still had heartbeat and respiration sustained by a mechanical respirator. *Id.* at 597. Our supreme court held that a lesser included offense instruction as to battery was properly refused by the trial court because the evidence revealed the victim had died and an autopsy had been conducted on his body. *Id.* at 603. Although our supreme court in *Swafford* focused on "death" as the distinguishing factor between murder and battery, it did not foreclose the possibility that other factors could exist. In that case, there was no

issue as to whether the defendant "caused" the victim's head injury and death because the evidence was clear that the victim eventually died as a result of a gunshot wound to the head inflicted by the defendant. Our case is distinguishable. There is a serious evidentiary dispute as to whether defendants actually "killed" Cantero or "caused his death" or whether it was accidental.

**3.** For example, if the battery instruction would have been allowed, there was evidence from which the jury could have found defendants guilty of battery, in spite of their self-defense claims. Furthermore, there was also evidence to support defendants' view that even if they did commit batteries, the batteries were not what "killed" Cantero if he later accidentally fell in his intoxicated state and hit his head.

The evidence presented at trial supported the giving of the lesser included offense instruction requested by defendants. Allowing the jury to consider battery as a lesser offense works to insure that the jury will accord defendants the full benefit of the reasonable doubt standard. *See Lynch v. State* (1990), Ind.App., 552 N.E.2d 56, 62 (Garrard, J., dissenting), *citing Keeble v. United States* (1973), 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844.

■ Upon review of the refusal of a tendered instruction, we also examine:

(1) Whether the tendered instruction correctly states the law;

(2) Whether there was evidence in the record to support the giving of the instruction; and

(3) Whether the substance of the tendered instruction is covered by other instructions given.

*Aschliman,* 589 N.E.2d at 1162, *citing Lynch,* 571 N.E.2d at 539. In this case, defendants' tendered battery instruction passes our examination and should have been given. We conclude the trial court committed reversible error by refusing defendants' lesser offense (battery) instruction. Although the evidence is sufficient to support defendants' convictions for involuntary manslaughter, such a result is not compelled.

We reverse and remand for a new trial consistent with this opinion.

SHIELDS, J., concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

I dissent because no serious evidentiary dispute exists regarding the cause of Cantero's death. The three doctors substantially agree. When their testimony is read together, the jury could have easily found that Cantero's death was caused by the severe beating and kicking that he received in the alley. The Majority desires to speculate as a fact finder regarding how Cantero got from the end of the alley to a parking lot approximately one hundred feet away. The jury could have concluded from the evidence that he got up and stumbled over to the parking lot and fell to the ground; or, the jury could have disbelieved the Defendants when they testified that they left him near the end of the alley. The cause of Cantero's death is clear to me, and it was clear to the jury: Cantero was beaten and kicked in the head severely and left mercilessly unattended. Later, he was found and taken to the hospital; there he died. Even if, as the Majority would like to speculate, the fall that caused his death occurred when he tried to get up and walk to the parking lot, the jury could still have found that the flogging he received was the cause of his fall and death.

*Schneider v. State* (1989), Ind.App., 538 N.E.2d 13 cited by the Majority in its attempt to distinguish between the noun "death" and the verb "kill" while speculating on "cause", supports the jury's finding and the judgment of the trial court in the case before us. In *Schneider,* the victim was beaten and kicked in much the same way that Cantero had been beaten and kicked here. Upon being warned that a car was coming, Schneider and Morgan abandoned the victim and left him lying helplessly in the street. A car ran over the victim and he later died. Judge Garrard wrote in *Schneider* that Schneider was not entitled to a lesser includible offense instruction. Judge Garrard stated that:

"It is immaterial whether death resulted from the blows from the defendant or the injuries occasioned by the automobile."

*Id.* at 15.

and he further reasoned:

"In the present case the jury could reasonably have inferred that when Schneider and Morgan pursued the victim into the street at night and began kicking him as he lay in the street, they knew or were bound to know that if a vehicle came down the street the victim would likely be unable to get out of the way and might be struck. That is precisely what occurred, and it is immaterial which

injuries actually caused the victim's death."

*Id.*

Here too, the Defendants "... knew or were bound to know ..." that severe harm could befall Cantero in the alley, from others who might find him or from his trying to locate his car.

I agree with *Schneider*. I disagree with the Majority in this appeal. If Cantero was found near death at the end of the alley where the defendants said they last left him or if he died alone in a parking lot a hundred feet away from the end of the alley is of no consequence. There is no evidence of someone other than the Defendants beating and kicking the victim senseless. Only mere speculation can inject a cause other than the one found by the jury. There is no serious evidentiary dispute as to the cause. I would affirm.