**Grant C. BROWN, Jr., Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 02A05–9504–CR–122.**

Court of Appeals of Indiana.

Dec. 29, 1995.

Transfer Denied March 11, 1996.

---

Robert E. Love, Love & James, Fort Wayne, for Appellant.

Pamela Carter, Attorney General, James A. Joven, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

KIRSCH, Judge.

Following a jury trial, Grant C. Brown was convicted of voluntary manslaughter,[1] a Class A felony, possession of a handgun with obliterated identification marks,[2] a Class C felony, and carrying a handgun without a license,[3] a Class A misdemeanor. On appeal, Brown raises the following issues:

1. Whether the trial court erred in admitting testimony as to Brown's previous uncharged batteries under Indiana Rule of Evidence 404(b)?

2. Whether the trial court erred in refusing to give Brown's tendered instruction for reckless homicide?

3. Whether the trial court erred in refusing to give Brown's tendered instruction for involuntary manslaughter?

4. Whether there was sufficient evidence to sustain Brown's conviction for voluntary manslaughter?

We reverse.

1. *See* IC 35–42–1–3 (1993 Ed.).

2. *See* IC 35–47–2–18 (1993 Ed.).

3. *See* IC 35–47–2–1 (1993 Ed.).

## FACTS AND PROCEDURAL HISTORY

On January 23, 1993, at approximately 8:00 p.m., Brown telephoned his ex-girlfriend, Audrey Hinton, at the home of Hinton's mother to inquire as to whether Brown could pick up some photographs of their son. Hinton replied that the photographs were at the Hope House, where she was living, and that Brown and Hinton would have to go there to get them.

Brown picked up Hinton at approximately 8:30 p.m. and drove to Hope House. When they returned to the home of Hinton's mother, Brown parked the car at the curb and placed his son's picture in the visor of the car. Hinton attempted to grab the picture, and a fight ensued. Brown then exited the car, walked around to the passenger side, opened the passenger door, and pulled Hinton from the car. Soon after, a neighbor heard two gun shots. Hinton fell to the ground with a gun shot wound just below her left eye. Brown ran into Hinton's mother's house screaming, "I shot her, I shot her," called 911, and then fled the scene. *Record* at 233–234. Brown later surrendered himself to the police.

On September 12, 1994, the date Brown's trial was scheduled to commence,[4] the State filed its Motion for Admissibility of Previous Batteries against Brown under IC 35–37–4–14 (1993 Ed.) which provides that in a prosecution for voluntary manslaughter:

"evidence of a previous battery is admissible into evidence in the state's case-in-chief for purposes of proving motive, intent, identity, or common scheme and design."

The statute requires that the state shall file a written motion of its intent to offer such evidence not less than ten days before trial.

Brown objected to the motion because he had not received the ten days notice required by the statute. The trial judge ruled that the Indiana Rule of Evidence 404(b) took precedence over IC 35–37–4–14, that the State gave Brown sufficient notice under Rule 404(b) of its intention to use the evi-

4. The trial court failed to call a jury panel on the scheduled trial date. Brown's case was, therefore, reset for trial on November 9, 1994.

dence at trial, and that Brown's previous batteries upon Hinton were admissible under Rule 404(b).

During the actual trial, which occurred on November 9, 1994, Brown testified that the shooting incident was an accident. He stated that as he and Hinton struggled over the picture, Hinton grabbed at Brown's right breast pocket where he kept his gun, and the gun discharged. Based upon this testimony, Brown requested that the jury be given tendered instructions on involuntary manslaughter and reckless homicide as lesser included offenses of the charged crime, voluntary manslaughter. The trial judge refused the two instructions, and the jury found Brown guilty of voluntary manslaughter.

## DISCUSSION AND DECISION

### I. Prior Uncharged Misconduct

#### A. Basis for admission.

Brown first asserts that the trial court incorrectly relied upon Indiana Rule of Evidence 404(b) rather than IC 35–37–4–14 when it admitted testimony as to Brown's previous uncharged incidents of battery. Brown argues that IC 35–37–4–14 should take precedence over Rule 404(b) which is a generic statute and not specifically directed to particular crimes or particular types of evidence. Brown insists that the two rules should be read together in that Rule 404(b) discusses under what circumstances other crimes, wrongs, or acts may be admissible and IC 35–37–4–14 provides for notice requirements in certain types of criminal action. Therefore, according to Brown, the State was still required to file its Motion for Admissibility of Previous Batteries ten days before trial.

We do not need to reach the issue as to the interplay of the rule and the statute. In the instant case, the actual trial did not take place until nearly two months after notice was given. Therefore, the state provided reasonable notice of uncharged batteries under Indiana Evidence Rule 404(b) and more than the ten days notice required by IC 35–37–4–14.

### B. Unfair prejudice.

Over Brown's objection, two witnesses were permitted to testify regarding previous beatings inflicted by Brown on Hinton. Brown asserts that the probative value of the evidence of his previous uncharged batteries was outweighed by the danger of unfair prejudice, confusion of the issues, and the likelihood that the evidence might mislead the jury.[5]

In determining whether evidence of the prior acts of misconduct may be admitted at trial, the trial court must determine 1) whether the evidence may be admitted for the purpose acceptable under Rule 404(b), and 2) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Brim v. State* (1993), Ind.App., 624 N.E.2d 27, 34, *trans. denied;* Ind.Evidence Rule 403. Admission of evidence under one of the exceptions to Rule 404(b) is inappropriate if the danger of unfair prejudice to the defendant substantially outweighs the probative value of the evidence. *James v. State* (1993), Ind.App., 622 N.E.2d 1303, 1308.

Here, Brown and Hinton were romantically involved for approximately two years, during which time the couple had a baby together. Within five months after the start of their relationship, however, Hinton began to complain to her mother about Brown's abusive treatment of her. Moreover, shortly before Hinton was shot, Brown was seen arguing and fighting with her. Based upon this evidence, Brown's prior uncharged batteries were found to be admissible to show the relationship between the parties and absence of accident. We find no error in the admission of this evidence. *See Elliott v. State* (1994), Ind., 630 N.E.2d 202, 204 (where defendant's prior threats and statements concerning victims were admissible to show the relationship between the parties and defendant's motive, plan, and ab-

---

5. *See* Indiana Rule of Evidence 403 which states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of is- sues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

sence of mistake); *Price v. State* (1993), Ind., 619 N.E.2d 582, 584 (where evidence of prior attacks of defendant upon his wife was admissible to show the relationship between the parties and defendant's motive and intent in the commission of the crime).

## II. Jury Instructions

■ Brown argues that the trial court erred in refusing lesser included offense instructions on involuntary manslaughter and reckless homicide. Our supreme court has recently held that the trial court should apply a three-step test to determine whether the trial court should have given an instruction on a lesser included offense. *Wright v. State* (Ind.1995), 658 N.E.2d 563, 566–67. First, the court should determine whether the claimed lesser offense is inherently included in the language of the statute. If the offense is inherently included, then the court should proceed to step three below. *Id.* at 566–67. Second, if the court determines that the alleged lesser included offense is not inherently included in the crime charged under step one, then it must determine whether the claimed offense is factually included in the crime charged by the charging document. *Id.* Third, if the court determines that the lesser charge is either inherently or factually included then it must determine whether there is evidence before the jury that the lesser included offense was committed. *Id.* This part of the test hinges on whether a serious evidentiary dispute exists with respect to the element which distinguishes the greater and lesser offenses. *Lynch v. State* (1991), Ind., 571 N.E.2d 537, 539.

### A. Reckless homicide.

■ Reckless homicide is defined as a killing committed recklessly. IC 35–42–1–5. IC 35–41–2–2(c) states:

"A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct."

The factor distinguishing reckless homicide from voluntary manslaughter is the requisite mens rea. For reckless homicide, the mens rea is reckless rather than knowing or intentional. *Compare* IC 35–42–1–3 (voluntary manslaughter) with IC 35–42–1–5 (reckless homicide). In *Wright,* our supreme court held that reckless homicide was inherently included in the offense of murder because the only distinguishing feature was the lesser culpability required. *Wright,* 658 N.E.2d at 567–68.

■ Turning to the third step in the analysis, we see that evidence showed that shortly after an argument and a fight, Hinton was shot. Directly after the shooting, Brown ran into the house screaming, "I shot her." *Record* at 233. This evidence does not preclude any reasonable possibility that Brown's conduct involved unjustifiable disregard of possible harm. The evidence warranted an instruction on reckless homicide, and the trial court erred in refusing to give one.

### B. Involuntary manslaughter.

■ IC 35–42–1–3 defines voluntary manslaughter as: "A person who knowingly or intentionally kills another human being while acting under sudden heat...." IC 35–42–1–4 defines involuntary manslaughter as:

"A person who kills another human being while committing or attempting to commit:

(1) a Class C or Class D felony that inherently pose a risk of serious bodily injury;

(2) a Class A misdemeanor that inherently poses a risk of serious bodily injury; or

(3) a battery...."

Battery is defined as knowingly or intentionally touching another person in a rude, insolent or angry manner. IC 35–42–2–1. Here, the killing of Hinton was accomplished by a "touching" by Brown and, therefore, applying the first part of the test, involuntary manslaughter is a lesser included offense of voluntary manslaughter. *See Lynch v. State,* 571 N.E.2d at 538–39 (involuntary manslaughter was lesser included offense of murder charge where killing was obviously accomplished with a touching, i.e., defendant "battered" victim with a shooting).

■ Next we must determine whether there was evidence before the jury that Brown committed involuntary manslaughter. *Id.* at 539. The evidence must be such that

the jury could conclude that the lesser offense was committed and the greater offense was not. *Id.* The standard for determining the state of the evidence is whether a serious evidentiary dispute exists as to the element that distinguishes the greater offense from the lesser offense. *Id.* In the instant case, where the distinguishing element is intent, the lesser included instruction of involuntary manslaughter will be warranted only if there is a "serious evidentiary dispute" about what Brown intended to do—kill or batter. *Id.*

■ Here, evidence was presented showing that Brown did not intend to kill Hinton. Hinton and Brown were seen arguing. Evidence was introduced showing that Hinton and Brown engaged in a fight. Moreover, Brown was seen exiting his car, walking around to the passenger side, and pulling Hinton from the car. Shortly thereafter, Hinton was shot. Brown, however, immediately ran into the house and called 911. Although Brown fled the scene of the crime, he surrendered to the police that same evening. This evidence shows a serious dispute as to whether Brown intended to kill or batter Hinton.

■ When reviewing the refusal of any tendered instruction, we determine: (1) whether the tendered instruction correctly states the law, (2) whether there was evidence in the record to support the giving of the instruction, and (3) whether the substance of the tendered instruction is covered by the other instructions given. *Sandilla v. State* (1992), Ind.App., 603 N.E.2d 1384, 1388. We conclude that Brown has met these requirements, and that it was reversible error for the trial court to have refused to instruct the jury on the lesser included offense of involuntary manslaughter.

### III. Sufficiency of the Evidence

■ Having determined that a new trial is required due to the trial court's failure to give instructions on the lesser included offenses of reckless homicide and involuntary manslaughter, we also address Brown's sufficiency of the evidence claim to ensure that the double jeopardy clause of the federal constitution will not be violated by retrial. Though double jeopardy bars retrial in cases of reversal for insufficient evidence, it does not bar retrial in cases of reversal for trial error. *Burks v. United State* (1978), 437 U.S. 1, 14–15, 98 S.Ct. 2141, 2148–49, 57 L.Ed.2d 1. This is so because a determination that a defendant was convicted through a judicial process which was defective in some fundamental respect implies nothing regarding the guilt or innocence of the defendant. *Id.* at 15, 98 S.Ct. at 2149. In *Lockhart v. Nelson*, 488 U.S. 33, 40–41, 109 S.Ct. 285, 290–91, 102 L.Ed.2d 265, 273–74, the United States Supreme Court held that:

> "where the appellate court reverses the conviction for 'trial error' and the evidence offered by the State and admitted by the trial court—whether erroneously or not—would have been sufficient to sustain a guilty verdict, no double jeopardy question is presented on retrial."

■ In the instant case, Brown contends that there was insufficient evidence to show that he intentionally killed Hinton. He argues that the discharge of the gun was an accident and not a result of his deliberate act. When reviewing the sufficiency of the evidence, we will neither reweigh the evidence nor judge the credibility of the witnesses, but will affirm the conviction if the evidence most favorable to the verdict and the reasonable inferences to be drawn therefrom provide probative evidence from which a reasonable trier of fact could infer guilt beyond a reasonable doubt. *Evans v. State* (1991), Ind., 571 N.E.2d 1231, 1237.

■ To convict Brown of voluntary manslaughter, the jury was required to determine beyond a reasonable doubt that Brown knowingly or intentionally killed Hinton while acting under sudden heat. *See* IC 35–42–1–3. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." IC 35–42–2–2 (1993 Ed.). "The trier of fact must usually resort to circumstantial evidence or reasonable inferences drawn from examination of the circumstances surrounding the crime to determine intent." *Davis v. State* (1994), Ind.App., 635 N.E.2d 1117, 1120. The intent to commit murder may be inferred from the nature of the attack and

the circumstances surrounding the crime. *Pilarski v. State* (1994), Ind., 635 N.E.2d 166, 169.

■ Here, there was sufficient evidence to support the jury's finding that Brown intended to kill Hinton. The record reflects that there was evidence to support Brown's claim that the shooting was accidental. There was also evidence supporting the claim that Brown intentionally shot Hinton while acting under sudden heat. A trier of fact is free to believe whomever it chooses in fulfilling its fact-finding function. *Brown v. State* (1990), Ind., 563 N.E.2d 103, 105. Sufficient evidence existed from which the jury could reasonably infer that Brown committed voluntary manslaughter. Thus, this cause can be retried without offending the protections afforded by the double jeopardy clause.

Reversed and remanded.

FRIEDLANDER, J., concurs.

DARDEN, J., dissents with separate opinion.

DARDEN, Judge, dissenting.

I agree with the majority's analysis of Issues I and III. Furthermore, I agree with the majority's procedural analysis of Issue II in light of our supreme court's recent ruling in *Wright v. State* (Ind.1995), 658 N.E.2d 563. However, because I believe there was no evidence before the jury indicating that Brown committed either the offense of reckless homicide or involuntary manslaughter, I respectfully disagree with the conclusion reached by the majority after application of the *Wright* analysis.

In determining when or whether a trial court should give a lesser included offense instruction, the third step of our supreme court's analysis in *Wright* requires that the trial court examine the "evidence in the case presented by *both* parties." *Wright,* 658 N.E.2d at 567 (emphasis added). "If the evidence does not so support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction." *Id.* My review of the evidence presented here fails to convince me there was

any evidence which warranted giving either of the two lesser included offense instructions requested by Brown. The jury should not have been permitted or required to speculate upon the evidence or lack of evidence in this case.

With respect to reckless homicide, I fail to see how, from the evidence cited by the majority, a jury could conclude Brown acted recklessly. That is, the facts that he engaged in an argument and a "fight" and claimed to have shot Hinton fail to indicate Brown engaged in conduct that was "in plain, conscious, and unjustifiable disregard of harm that might result and [that] the disregard involve[d] a substantial deviation from acceptable standards of conduct." I.C. 35–41–2–2(c).

My review of reckless homicide cases reveals a common characteristic in that the defendant committed an act or omission which rose to the level of recklessness. For example, *see McClaskey v. State* (1989), Ind., 540 N.E.2d 41 (evidence that a contributing factor to baby's death was having been shaken severely and mother's admission she had become extremely angry and may have picked the baby up too hard was sufficient to sustain defendant's conviction for reckless homicide); *Hall v. State* (1986), Ind., 493 N.E.2d 433 (evidence that parents believed their child's sickness was the devil in a spiritual battle with God and, therefore, refused to obtain medical attention for child was sufficient to sustain parent's conviction for reckless homicide); and *Hayes v. State* (1987), Ind.App., 514 N.E.2d 332 (evidence that defendant was under the influence of alcohol while traveling in his car when he attempted to turn corner and encountered barricades, and that, rather than slow down or stop, he turned his car around, crossed four lanes of traffic, hit a curb, and then veered into victim's car was sufficient to sustain defendant's conviction for reckless homicide).

Here, the evidence cited by the majority fails to reveal an overt act or omission such as shaking a baby, failing to obtain medical attention, or driving across four lanes of traffic. Indeed, although it was not cited by the majority, even the fact that Brown carried a loaded gun, which was ready to fire, does not

in my view rise to "a substantial deviation from acceptable standards of conduct." The only evidence concerning the specifics of the argument was presented by Brown. He indicated the argument consisted of "tussling" over possession of the photograph and that, as a result, the gun discharged accidentally when Hinton grabbed his pocket. The record is devoid of any evidence indicating Brown personally touched the gun or that he and Hinton were "tussling" over the gun at the time it discharged. Many people, including police, carry loaded firearms on their persons at all times, and we, as a society, do not expect them to anticipate becoming engaged in a volatile argument which may result in the victim grabbing a concealed weapon and accidentally shooting him or herself. Thus, in my view, the evidence fails to reveal that Brown acted recklessly.

Similarly, I believe the evidence was insufficient to warrant giving Brown's tendered involuntary manslaughter instruction. As noted by the majority, involuntary manslaughter is defined as "a person who kills another human being while committing or attempting to commit a battery." I.C. 35–42–1–4. The majority claims the fact that Hinton and Brown were arguing, its characterization of the evidence as a "fight," and the fact that a witness saw Brown attempt to pull Hinton from the car indicates there is a serious evidentiary dispute about whether Brown intended to kill or batter Hinton and, thus, warrants the giving of an involuntary manslaughter instruction.

I fail to discern a dispute in the evidence. Brown characterized the "fight" between himself and Hinton to be a "tussling" or scuffle over possession of the picture. The evidence indicates that Hinton grabbed Brown's photograph and attempted to exit Brown's car. In response, Brown grabbed the photograph and attempted to push her from his car. There is no evidence that he aggressively attacked Hinton. At most, the evidence could be characterized as mutual combat. Furthermore, there is absolutely no evidence that Brown intended to do anything at all other than gain possession of his photograph.

Throughout the trial, Brown claimed the shooting was an accident—in other words, a complete absence of a *mens rea*—while the State attempted to prove circumstantially that Brown intended to kill Hinton while acting under "sudden heat." This does not indicate an evidentiary dispute as to whether Brown's intent was to either kill or batter Hinton, and is evidentially insufficient to support the giving of an involuntary manslaughter instruction.

I agree with the trial court's analysis when it denied Brown's tendered instructions:

> It seems to me that you are trying to go, to cover both ends you know on this situation. Your defense is accident. This was an accidental situation. They were arguing and she grabbed and the gun went off. Totally accidental. I don't think you can dovetail ... into that defense, well, if you don't buy that defense, then look at reckless homicide or involuntary manslaughter.

(R. 556–7). Thus, for the foregoing reasons, I would affirm the trial court's denial of Brown's tendered lesser included offense instructions.