Mark FISH, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 71S00–9612–CR–788.

Supreme Court of Indiana.

May 19, 1999.

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Katherine L. Modesitt, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

DICKSON, J.

The defendant, Mark Fish, was convicted of the July, 1995 murder of Barbara J. Osterhouse at South Bend.[1] In this direct appeal, he claims that there was insufficient evidence of his intent to murder and that the trial court improperly refused to instruct the jury

---

1. IND.CODE § 35–42–1–1 (1993).

on reckless homicide as an included offense. We affirm the trial court.

■ In reviewing a claim of insufficient evidence, we consider only the evidence that supports the verdict, and we draw all reasonable inferences from that evidence. *Dockery v. State*, 644 N.E.2d 573, 578 (Ind.1994). We neither reweigh the evidence nor judge the credibility of the witnesses, *Marshall v. State*, 621 N.E.2d 308, 320 (Ind.1993), and will affirm the conviction if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *McEwen v. State*, 695 N.E.2d 79, 90 (Ind.1998).

■ The evidence favorable to the judgment indicates that the defendant and Osterhouse had been involved in a personal relationship, during the course of which Osterhouse repeatedly left the defendant to live with her mother in Tennessee, but always returned to the defendant. In March, 1995, following further relationship difficulties, Osterhouse again moved in with her mother. The defendant wrote several letters begging her to return to him. As time progressed, however, his letters changed in tone, and he began threatening Osterhouse with prosecution for drug use during the pregnancy with their child. Among statements in his letters were threatening messages, such as: "My pain and suffering is over. I believe yours is just about to start." Record at 780. He also wrote to Osterhouse's mother on a pre-printed paper entitled "Gift Certificate from the office of Jack K[e]vorkian, M.D." Record at 790. The defendant filled in the blanks "To *Barb*" and "From *Us*." On the back of the certificate, he urged Osterhouse's mother: "If you love Barb don't let her come up here next month or ever." *Id.* He also called Sherri Jester, a friend of Osterhouse, and told her that if Osterhouse came home to him, she would go back to Tennessee in a box.

Notwithstanding these communications, Osterhouse returned to live with the defendant in July of 1995. Later that month, Osterhouse's mother visited South Bend. During this visit, some of Osterhouse's friends went to the defendant's house to retrieve Osterhouse and the couple's child so that they could visit with Osterhouse's mother. The defendant and Osterhouse argued about whether she was going to leave him again. Eventually, it appeared that the dispute was resolved, and the defendant agreed to let Osterhouse go, even offering the use of his car for the trip. As Osterhouse and her friends were leaving, the defendant asked Osterhouse to speak to him privately, and she re-entered the house. The friends proceeded to the car with Osterhouse's daughter. The defendant and Osterhouse were heard arguing again. Then Osterhouse's friends, who were waiting at the car, heard a loud sound followed by the sound of a door slamming. When the friends went to the front door to investigate, they discovered that the door could not be opened. On further inspection, the friend's could see Osterhouse's body lying against the door and blood all around her. Although they had previously seen the defendant in the house with Osterhouse, the defendant was gone by the time they had reached the door. They summoned help, but Osterhouse was dead by the time the emergency medical technicians arrived, moved the body away from the door, and entered the home. The pathologist determined that Osterhouse died from a single gunshot wound to the head. The shot was fired at a distance of one to twelve inches from the head, and there was no soot or gunpowder on either of Osterhouse's hands.

The day after Osterhouse's death, the defendant called Sherri Jester again, this time asking how she liked her friend now and stating that he had a surprise for Jester. Approximately two days after this phone call, the defendant, who had changed his appearance by cutting his hair, shaving his beard, and removing his glasses, told his friend, Jack Hyatt, the location of a gun he had placed in a bag and hidden in the woods. When the defendant was later arrested, Hyatt informed the police about the location of the gun, and, using those directions, the police recovered a bag containing a gun and several other items. Although the police could obtain no identifiable fingerprints from the gun, they did find the defendant's finger-

prints on other items in the bag and determined that the gun in the bag had fired the bullet that killed Osterhouse.

We conclude that a jury could reasonably find beyond a reasonable doubt that the defendant knowingly killed Osterhouse. Sufficient evidence supports the conviction.

■ The defendant also contends that the trial court erroneously refused his tendered instruction on reckless homicide. To determine whether to give a requested instruction on a lesser included offense, the trial court is governed by the three-part test set out in *Wright v. State*, 658 N.E.2d 563, 566–67 (Ind. 1995). The first two parts of this test require the court to determine whether the offense is either inherently or factually included in the charged offense. *Id.* If so, *Wright* requires the trial court to determine whether there is a "serious evidentiary dispute" regarding any element that distinguishes the greater from the lesser offense. *Brown v. State*, 703 N.E.2d 1010, 1019 (Ind. 1998). Because the only distinguishing element between Murder and Reckless Homicide is the state of mind required for commission of the offenses ("knowing or intentional" for Murder and "reckless" for Reckless Homicide), *compare* IND.CODE § 35–42–1–1 (1993), *with* IND.CODE § 35–42–1–5 (1993), *construed in Wright*, 658 N.E.2d at 567, Reckless Homicide is an inherently included lesser offense of Murder. Thus, the determinative issue for the trial court was whether the evidence produced a serious evidentiary dispute to justify the giving of the requested instruction.

■ At trial, the defendant claimed only that he was entitled to the instruction because "the State's case [was] based entirely on circumstantial evidence." Record at 872. He did not specifically identify any claimed evidentiary dispute. Declining to give the instruction, the trial court concluded generally that the facts did not warrant it, but the court did not expressly find the absence of a serious evidentiary dispute. Upon appellate review of cases such as this, when the trial court rejects a tendered instruction on the merits of a lesser included offense but makes no finding regarding the absence of serious evidentiary dispute, and when the defendant

has made no specific claim at trial as to the nature of such dispute, our appellate standard of review is abuse of discretion. *Brown*, 703 N.E.2d at 1020.

A trial court's consideration of whether a serious evidentiary dispute exists generally requires the trial court to evaluate the weight and credibility of evidence and then subjectively determine the seriousness of any resulting dispute. Upon appellate review for abuse of discretion, we accord the trial court considerable deference, view the evidence in a light most favorable to the decision, and determine whether the trial court's decision can be justified in light of the evidence and circumstances of the case. *See* KENNETH M. STROUD, 4A INDIANA PRACTICE, APPELLATE PROCEDURE § 12.8, at 146 (1990).

■ On appeal, the defendant contends that a serious evidentiary dispute existed in the evidence regarding whether he acted "recklessly" rather than "knowingly." Given the evidence that Osterhouse was killed when the defendant fired a gun into her left temple at close range, that the defendant and Osterhouse had argued about whether this visit to her mother would result in Osterhouse leaving him again, and that the defendant had previously threatened to kill Osterhouse when she was living with her mother, we find that the trial court did not abuse its discretion in refusing to instruct the jury on reckless homicide as a lesser included offense.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, SELBY, and BOEHM, JJ., concur.