

FILED

Jul 20 2017, 9:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael P. DeArmitt
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Dustin A. Evans,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 20, 2017

Court of Appeals Case No.
03A04-1612-CR-2911

Appeal from the Bartholomew
Superior Court

The Honorable James D. Worton,
Judge

Trial Court Cause No.
03D01-1511-F5-5914

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Dustin Evans (Evans), appeals his conviction for escape, a Level 5 felony, Ind. Code § 35-44.1-3-4(a); and unlawful possession of a syringe, a Level 6 felony, I.C. § 16-42-19-18(a).

We affirm.

# ISSUES

Evans presents two issues on appeal, which we restate as the following:

(1) Whether the trial court committed a fundamental error in instructing the jury; and

(2) Whether the trial court abused its discretion by ordering consecutive sentences.

# FACTS AND PROCEDURAL HISTORY

On November 17, 2015, at approximately 3:00 a.m., Officer Daniel Garvey (Officer Garvey) of the Edinburgh Police Department was dispatched to investigate the report of a suspicious man who was lurking in front of a residence. Upon arriving at the residence, Officer Garvey recognized the suspicious man as Evans due to previous encounters. Officer Garvey also knew that Evans had an active arrest warrant. At that point, Officer Garvey activated his lights and attempted to stop Evans. Evans fled, but was later stopped and apprehended by another officer who was nearby in his patrol vehicle. Evans was carrying a backpack, and pursuant to a search of the bag, Officer Garvey

found a plastic pouch containing methamphetamine, a knotted sock containing five syringes, cotton balls, and a spoon with white residue. Officer Raina Bostock (Officer Bostock), who was at the scene, transported Evans to the Bartholomew County Jail. Before Evans was booked, he complained that he was not feeling well, and he notified the officers that he had swallowed three bags of heroin. Based on the complaints, Officer Bostock transported Evans to Columbus Regional Hospital. After receiving the necessary treatment, Evans was cleared by the medical personnel, and Officer Bostock secured Evans in handcuffs and placed him in her patrol vehicle. Evans' legs were not restrained.

[5] On his return to the jail, Evans lay down on the backseat and began vomiting on the floorboard. Upon seeing this, Officer Bostock pulled over, exited, and she moved Evans so that his head would be positioned outside of the vehicle. After Evans stopped vomiting, she placed Evans in an upright position and strapped his seatbelt. As Officer Bostock was preparing to merge into traffic, she heard loud banging noises. When she turned around, she saw Evans kicking the passenger door with his legs. Officer Bostock put the vehicle into park and exited the vehicle. By this time, the door was open and Evans was running down the street. As she pursued Evans, she radioed for assistance. After an hour of searching in the surrounding areas, the officers abandoned the search. The record shows that Evans was rearrested several days thereafter.

[6] On November 20, 2015, the State filed an Information, charging Evans with escape, a Level 5 felony; and unlawful possession of a syringe, a Level 6 felony. On October 4, 2016, Evans' jury trial was held. At the close of the evidence,

the jury found Evans guilty as charged. On November 22, 2016, the trial court conducted Evans' sentencing hearing, and it thereafter sentenced Evans to consecutive executed sentences of six years for the escape conviction, and two years for the unlawful possession of a syringe.

Evans now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Jury Instructions*

Evans argues that the trial court committed a fundamental error when instructing the jury. Specifically, Evans contends the jury instructions relating to the escape charge did not properly convey the appropriate *mens rea* requirements.

The manner of instructing a jury is left to the sound discretion of the trial court. *Patton v. State*, 837 N.E.2d 576, 579 (Ind. Ct. App. 2005). When reviewing the jury instructions, we consider them as a whole and in reference to each other. *Id*. We will not reverse the ruling of the trial court unless the jury instructions, taken as a whole, misstate the law or mislead the jury. *Id*. Before a defendant is entitled to a reversal, he must affirmatively show that the erroneous instruction prejudiced his substantial rights. *Id*.

We note, and Evans aptly points out, that he failed to object to the trial court's jury instructions relating to the escape charge. A defendant who fails to object to a jury instruction at trial waives any challenge to that instruction on appeal, unless giving the instruction was fundamental error. *Wright v. State*, 730 N.E.2d

713, 716 (Ind. 2000). To avoid waiver, Evans argues that the presumed instructional errors constitute fundamental error. Fundamental error is error that represents a blatant violation of basic principles rendering the trial unfair to the defendant, thereby depriving the defendant of fundamental due process. *Ritchie v. State*, 809 N.E.2d 258, 273 (Ind. 2004) (citation omitted). The error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id*. In determining whether a claimed error denies the defendant a fair trial, we consider whether the resulting harm or potential for harm is substantial. *Id*. The element of harm is not shown by the fact that a defendant was ultimately convicted. *Id*. at 273-74. Rather, it depends upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. *Id*. at 274.

[11]     Indiana Code Section 35-44.1-3-4(a) states, "A person . . . who *intentionally* flees from lawful detention commits escape, a Level 5 felony" (emphasis added). Final jury instructions number 5 and 15 both indicated that the crime of escape as charged in Count I is defined by statute as "[A] person who *knowingly* or intentionally flees from lawful detention." (Appellant's App. Vol. II, p. 57, 86) (emphasis added). Evans argues the alternative *mens rea* of 'knowingly' is not mentioned in Indiana Code Section 35-44.1-3-4(a). While the State agrees the improper *mens rea* of knowingly, as added in final jury instructions number 5 and 15, was a misstatement of the law, the State posits that the instructional errors did not result in an unfair trial since the intent element was not a central

issue at Evans' trial. In support of its claim, the State cites *Winkleman v. State*, 22 N.E.3d 844, 852 (Ind. Ct. App. 2015), *trans. denied*, where we held that an "error in an instruction on *mens rea* does not rise to the level of fundamental error where the defendant's *mens rea* was not a central issue at trial."

[12] In determining the instant issue, we find *Ramsey v. State*, 723 N.E.2d 869, 871-73 (Ind. 2000), instructive. In *Ramsey,* our supreme court found no fundamental error in the following jury instruction:

> A person attempts to commit murder when, acting with the culpability required for commission of Murder, he engages in conduct that constitutes a substantial step toward commission of Murder; which is to knowingly or intentionally kill another human being. The crime of attempted murder is a Class A felony.
>
> To convict the defendant of Attempted Murder under Count I, the State must prove each of the following elements:
>
> 1. The defendant
>
> 2. knowingly
>
> 3. with specific intent to kill
>
> 4. engaged in conduct
>
> 5. which was a substantial step toward the commission of the crime of Murder; which is to knowingly or intentionally kill another human being.

If the State fails to prove each of these elements, you should find the defendant not guilty.

If the State does prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of the crime of Attempted Murder, a Class A felony.

*Id.* at 871. The supreme court concluded:

The trial court should not have included the word "knowingly" in either the first sentence or the enumerated elements. But this language was not objected to and we narrowly conclude that no fundamental error has been established. First, despite the instruction's defects, the trial court enumerated "specific intent to kill" among the elements that the State was required to prove beyond a reasonable doubt. Second, the trial court read the jury the charging information which contains the proper *mens rea*. Because the correct *mens rea* was enumerated both as an element in the charging instrument and as an element that the State was required to prove beyond a reasonable doubt, we believe that the jury instructions, taken as a whole, sufficiently informed the jury of the State's burden of proving that the Defendant specifically intended to kill the victim.

*Id.* at 873.

[13] In the instant case, the trial court instructed the jury as follows:

PRELIMINARY INSTRUCTION NO. 5

The crime of Escape charged in Count [I] is defined by statute as follows:

> A person who knowingly or intentionally flees from lawful
> detention commits [e]scape, a Level 5 felony.

(Appellant's App. Vol. II p. 57). In addition, the trial court's Final Instruction No. 15 stated:

> The crime of [e]scape charged in Count [I] is defined by law as follows:
>
> A person who knowingly or intentionally flees from lawful detention commits [e]scape, a Level 5 felony.
>
> Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:
>
> 1. The Defendant
>
> 2. Knowingly or intentionally
>
> 3. Fled from lawful detention
>
> If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of [e]scape, a Level 5 felony, as charged in Count [I].

(Appellant's App. Vol. II, p. 86). Evans argues that it is clear from reading these two instructions, and comparing them to Indiana Code section 35-44.1-3-4(a), that the trial court erroneously instructed the jury about the requisite *mens rea* required to convict Evans of the escape charge. We disagree.

[14] Comparing the present case to *Ramsey*, assuming 'knowingly' was not included in the jury instructions with respect to the escape charge, we find that the escape instructions in the present case sufficiently informed the jury of the proper *mens rea* which the State was required to prove beyond a reasonable doubt. We recognize that the correct *mens rea*, *intent to flee*, was listed during the State's closing argument, final instructions to the jury, and charging information. We first note that in the State's closing arguments, the State expressed that [Evans] intentionally fled . . . from [] Officer [Bostock]." (Tr. Vol. II, p. 81). The State impressed upon the jury that "the issue that you have to decide is whether or not he fled from lawful detention, and it's pretty clear that he did . . . Evans was in lawful detention and he fled." (Tr. Vol. II, p. 87). Secondly, while instructing the jury, the trial court advised that

> A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so. If a person is charged with intentionally causing a result by his conduct, it must have been his conscious objective not only to engage in the conduct but also to cause the result.

(Tr. Vol. II, p. 90). Finally, the trial court read to the jury, the charging information which contained the proper *mens rea*—*i.e.*, "on or about November 17, 2015, in Bartholomew County, State of Indiana, [] Evans, did intentionally flee from lawful detention." (Tr. Vol. II, p. 97).

[15] Although the improper *knowingly* language is problematic, we find that the instructional error did not render a fair trial impossible for Evans. *See Sanders v. State*, 764 N.E.2d 705, 711-12 (Ind. Ct. App. 2002). Upon our reading of the

escape jury instructions and also in the context of all the information given to the jury, we conclude that the trial court's escape instructions informed the jury that the State was required to prove beyond a reasonable doubt that Evans intentionally fled from lawful custody. Finding that Evans has failed to establish that he was deprived of a fair trial as a result of the challenged jury instructions, we conclude that the error did not rise to the level of fundamental error.

## II. *Consecutive Sentences*

[16] Evans also contends that the trial court abused its discretion in imposing consecutive sentences, arguing that it was prevented from doing so because his convictions for escape and unlawful possession of a syringe arose from a single episode of criminal conduct.

[17] In general, a trial court cannot order consecutive sentences in the absence of express statutory authority. *Reed v. State*, 856 N.E.2d 1189, 1199 (Ind. 2006). "'A sentence that is contrary to or violative of a penalty mandated by statute is illegal in the sense that it is without statutory authorization.'" *Id.* (quoting *Rhodes v. State*, 698 N.E.2d 304, 307 (Ind. 1998)). "An appellate claim of sentencing error is subject to review for abuse of trial court discretion; reversal results 'only if there has been a manifest abuse of discretion.'" *Reynolds v. State,* 657 N.E.2d 438, 440 (Ind. Ct. App. 1995) (quoting *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993)).

[18] Indiana Code section 35-50-l-2(c)(2) provides that except for statutory crimes of violence—which escape and unlawful possession of a syringe are not—"the total of the consecutive terms of imprisonment . . . to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." The term "episode of criminal conduct" has been statutorily defined as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35–50–1–2(b). "Whether certain offenses constitute a single episode of criminal conduct is a fact-sensitive inquiry to be determined by the trial court before it is subject to appellate review. *Schlichter v. State*, 779 N.E.2d 1155, 1157 (Ind. 2002).

[19] Evans claims that the events for his crimes constituted a single episode and cites to *Purdy v. State*, 727 N.E.2d 1091 (Ind. Ct. App. 2000). *trans. denied.* In *Purdy*, the defendant went to the house of his former girlfriend despite a court' order not to have contact with her. *Id.* at 1092. The defendant pounded on her door and threatened to kick it in. *Id.* The former girlfriend, who did not have a telephone in her house, tried to run next door to use the telephone at the Village Pantry. *Id.* The defendant, however, grabbed her by the shoulders, bruising her. *Id.* When the police arrived, and attempted to handcuff the defendant, he fought back—kicked and spat at the officers, and attempted to flee. *Id.* As the officers placed the defendant in a vehicle, he threatened to kill one of them. *Id.* The State charged the defendant with felony intimidation, resisting law

enforcement, and battery. *Id*. The *Purdy* court held that the defendant's actions constituted a single episode because "all of his actions took place during a relatively short period of time and all were related to his assault on [his former girlfriend]." *Id*. at 1093.

[20] The State, in turn, claims that the *Purdy* case is not instructive because unlike in *Purdy*, where the events took place during a relatively short period of time, the facts of the instant case demonstrate a break in the sequence of events. In support, the State cites to our decision in *Newman v. State*, 690 N.E.2d 735 (Ind. Ct. App. 1998). In *Newman*, police officers were dispatched to a tavern in response to a burglary report. *Id*. at 736. When they arrived, the defendant was sitting in his car in the tavern parking lot. *Id*. The officers stopped in front of the defendant's vehicle and ordered him three times to get out of his car. *Id*. The defendant refused to get out of his car and sped away from the police. *Id*. The police officers pursued the defendant's vehicle until he ultimately crashed into a cement wall. *Id*. Following the crash, the officers discovered cigarettes and money taken by the defendant from the tavern. *Id*. They placed the defendant under arrest and summoned an ambulance to transport the defendant to a hospital for the treatment of the injuries he received in the crash. *Id*. After the defendant and the officers arrived at the hospital, hospital personnel requested that the defendant not be handcuffed in order that he be properly treated. *Id*. When no officer was present in the treatment room, the defendant managed to flee down the hospital corridor as hospital personnel yelled for assistance. *Id*. Police officers recaptured the defendant and subsequently

transported him to jail. *Id*. The defendant pled guilty to burglary, theft, escape, resisting law enforcement, and driving while suspended. *Id*. The *Newman* court found that the defendant's actions constituted three separate episodes: burglary and theft, being the first distinct episode; resisting law enforcement and fleeing, as the second distinct episode; and escape in the hospital, as the third distinct episode. *Id*. at 737. The *Newman* court concluded that each of these episodes was sufficiently unrelated and each could have been described independently without referring to the specific details of the other episodes. *Id*. As such, the *Newman* court held that the defendant's crimes were committed during three distinct episodes of criminal conduct. *Id*.

[21] Here, Evans was sentenced to six years for the escape offense and two years for the unlawful possession of a syringe, with sentences to be served consecutively. Notwithstanding Evans' contention that his offenses constituted a single episode of criminal conduct, we find that like the defendant in *Newman*, and unlike the defendant in *Purdy*, Evans engaged in distinct episodes of criminal conduct. Specifically, following a search of his backpack after his arrest in the early morning of November 17, 2015, Evans was found in possession of syringes. Evans was then transported to the county jail, and prior to being booked, Evans complained that he was not feeling well. Based on these complaints, Evans was transported by Officer Bostock to Columbus Regional Hospital. After Evans received treatment and was cleared by the hospital personnel, Officer Bostock placed handcuffed Evans in the back of her patrol car. On his return trip to the county jail, Evans violently kicked the door,

which made Officer Bostock stop the vehicle. Moments later, Evans effectively kicked the door open and escaped. In light of the foregoing, we conclude that a full account of Evans's individual crimes can be given without reference to the other. Because the crimes of unlawful possession of syringes and escape were two separate criminal episodes, the trial court did not abuse its discretion when it ordered the sentences for each offense to be served consecutive to one another.

## CONCLUSION

[22] Based on the foregoing, we conclude that there was no fundamental error in the trial court's jury instruction for Evans' escape charge; and the trial court did not abuse its discretion in ordering consecutive sentences for Evans' offenses.

[23] Affirmed.

[24] Najam, J. and Bradford, J. concur