# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 30 2017, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney
General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dantez Pitts,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 30, 2017<br><br>Court of Appeals Case No.<br>49A05-1706-CR-1294<br><br>Appeal from the<br>Marion Superior Court<br><br>The Honorable<br>Grant W. Hawkins, Judge<br><br>Trial Court Cause No.<br>49G05-1512-MR-43961 |

**Kirsch, Judge.**

[1] Dantez Pitts ("Pitts") was convicted after a jury trial of murder,[1] a felony, and was sentenced to sixty years executed. He appeals his conviction and raises the following restated issues:

I. Whether the trial court committed fundamental error when it instructed the jury on voluntary manslaughter; and

II. Whether the trial court abused its discretion when it refused to give a jury instruction on reckless homicide.

[2] We affirm.

## Facts and Procedural History

[3] In November 2015, Pitts was in an on and off again relationship with Carla Harris ("Harris"), who stayed at the Motor 8 Inn in Indianapolis, Indiana. When Pitts and Harris were together, Pitts stayed at the Motor 8 Inn with Harris. On the night of November 21-22, 2015, the relationship between Pitts and Harris was off again, and Harris spent the night with another ex-boyfriend in his semi-truck, which was parked near the Motor 8 Inn. Harris stayed with the ex-boyfriend until the evening of November 22. Before meeting up with her ex-boyfriend, Harris had used both heroin and cocaine, and when she left the truck on the evening of November 22, she was experiencing symptoms of withdrawal and felt ill. Harris then went to the Motor 8 Inn to get more heroin from her friend, Poochie. However, instead of Poochie, Harris encountered

---

[1] *See* Ind. Code § 35-42-1-1.

Pitts, who told Harris he had a gun and made a threat against her ex-boyfriend. Harris did not see the gun and did not believe that Pitts had one.

[4] Harris then left and went back to her ex-boyfriend's semi-truck. Once there, she got into an argument with her ex-boyfriend and decided to call her friend, Jim Bakemeier ("Bakemeier"). Harris asked Bakemeier to pick her up, and he told her he would be right there. Bakemeier arrived at the Motor 8 Inn, but before Harris left, she still wanted to purchase some drugs, so Bakemeier drove to a different area of the parking lot.

[5] While Harris was waiting in Bakemeier's truck for the drug dealer to come out, she saw Pitts approach with a bottle of Gatorade in his hand. Pitts appeared to be angry, and when he walked around to the passenger side of Bakemeier's truck, where Harris was seated, Harris told him to leave. Pitts then walked over to a van parked nearby, which was used by the hotel residents to consume drugs inside, and then returned to Bakemeier's truck. Pitts stood in front of the truck and began pounding on the hood. Pitts called Harris a "trash ass bitch" and poured his Gatorade all over the hood of the truck. *Tr. Vol. II* at 180. Harris told Bakemeier to drive away, but Bakemeier refused, stating, "I'm not going to let him punk me." *Id*. at 204. Bakemeier then took his foot off of the brake and the truck rolled forward a little bit, but did not hit Pitts. Pitts then came around to the driver's side of the truck, and Bakemeier opened the truck door, which knocked Pitts backward. Pitts then pulled out a handgun and fired four shots into the truck, hitting Bakemeier.

[6] Harris ran out of the truck and started to flee. However, when she saw Pitts running away, she went back to Bakemeier and called 911. She then ran to her ex-boyfriend's semi-truck and called 911 again.[2] Harris identified Pitts as the shooter in both calls, gave a detailed description of his clothing, and told the dispatcher which rooms that Pitts could be staying in at the Motor 8 Inn. Harris then went back to the Motor 8 Inn, purchased heroin, and used it. When she saw the emergency vehicles approaching, Harris left the scene.

[7] Indianapolis Metropolitan Police Department officers arrived at the Motor 8 Inn at approximately 8:22 p.m. When they arrived, Bakemeier was unconscious and bleeding profusely from his face. Bakemeier was located near an older model Ford pickup truck, that was registered to Bakemeier, with its engine running, and there was a large amount of blood around the driver's side. There were bullet marks to the windshield and the driver's side door. In critical condition, Bakemeier was taken to Eskenazi Hospital where he died. The cause of death was a gunshot wound to the head.

[8] The Motor 8 Inn surveillance system captured the shooting and the events leading up to it. The police found a Gatorade bottle at the scene containing Pitts's DNA and fingerprint. *Tr. Vol. III* at 129, 145. The police located Harris the day after the shooting when she returned to the hotel. Initially, Harris lied about her identity, but later told the officers who she was, gave a statement, and

---

[2] When Harris called 911, she used the name "Denise Avant" because Harris had a warrant for her arrest and did not want to be arrested. *Tr. Vol. II* at 184.

identified Pitts from a photo lineup. The police were not able to locate Pitts in Indianapolis. On December 15, 2015, a warrant was issued for Pitts's arrest, and on January 5, 2016, the United States Marshal's Service located Pitts in Flint, Michigan.

[9] The State charged Pitts with one count of murder. A jury trial occurred on February 27-28, 2017. After the end of the first day of trial, the parties discussed the final jury instructions. The trial court said that it included instructions on voluntary manslaughter and sudden heat and asked Pitts if he wanted any other instructions, to which Pitts responded, "potentially self-defense." *Tr. Vol. II* at 220. At the close of the evidence, the State argued against giving the voluntary manslaughter instruction, contending that no sudden heat existed because Pitts already appeared agitated when he approached the truck and was the aggressor during the entire incident. *Tr. Vol. III* at 148-49. Pitts argued in favor of the instruction, stating that he was startled by the truck door opening, which triggered the sudden heat. *Id*. at 151. After this argument, the trial court decided to give an instruction on voluntary manslaughter and asked the parties if they objected to the language of the instruction. Pitts did not raise an objection and informed the trial court that he was not going to ask for a self-defense instruction, but was, instead, going to ask for a reckless homicide instruction. Pitts tendered a proposed reckless homicide instruction, which was denied by the trial court.

[10] During his closing argument, Pitts admitted that he was the individual who fired the gun at the victim and asked the jury to find him guilty of voluntary

manslaughter. *Id*. at 178, 181. The trial court gave final instructions on voluntary manslaughter and sudden heat. During deliberations, the jurors sent a question to the trial court, asking if they could have a more thorough definition of sudden heat, and after discussion, the trial court decided not to give an additional instruction, but instead, allowed each party five minutes to explain sudden heat to the jurors. The parties then gave additional argument on sudden heat. After further deliberations, the jury returned a verdict finding Pitts guilty of murder. Pitts now appeals.

## Discussion and Decision

## I. Voluntary Manslaughter Instruction

[11] Pitts argues that the trial court erred in instructing the jury on voluntary manslaughter. The manner of instructing a jury is left to the sound discretion of the trial court. *Evans v. State*, 81 N.E.3d 634, 637 (Ind. Ct. App. 2017). When reviewing the jury instructions, we consider them as a whole and in reference to each other. *Id*. We will not reverse the ruling of the trial court unless the jury instructions, taken as a whole, misstate the law or mislead the jury. *Id*. Before a defendant is entitled to a reversal, he must affirmatively show that the erroneous instruction prejudiced his substantial rights. *Id*.

[12] Pitts failed to object to the trial court's jury instruction relating to the lesser-included offense of voluntary manslaughter. A defendant who fails to object to a jury instruction at trial waives any challenge to that instruction on appeal, unless giving the instruction was fundamental error. *Pattison v. State*, 54 N.E.3d

361, 365 (Ind. 2016). To avoid waiver, Pitts argues that the presumed instructional errors constitute fundamental error. "Fundamental error is error that represents a blatant violation of basic principles rendering the trial unfair to the defendant, thereby depriving the defendant of fundamental due process." *Evans*, 81 N.E.3d at 637. The error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Winkleman v. State*, 22 N.E.3d 844, 849 (Ind. Ct. App. 2014), *trans. denied*. "In evaluating the issue of fundamental error, we must look at the alleged misconduct in the context of all that happened and all relevant information given to the jury—including evidence admitted at trial, closing argument, and jury instructions—to determine whether the misconduct had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible." *Id.* The element of harm is not shown by the fact that a defendant was ultimately convicted. *Evans*, 81 N.E.3d at 273-74.

[13] Pitts contends that the trial court committed fundamental error when it gave Final Instruction 21A ("Instruction 21A") to the jury, which discussed lesser-included offenses, and, in particular, the offense of voluntary manslaughter as a lesser-included offense of murder. Pitts asserts that Instruction 21A was confusing and misleading because it "indicated that the jury did not have to consider voluntary manslaughter if they found all the elements of murder . . . left the jury with the impression that they could only consider voluntary manslaughter if they found Pitts not guilty of murder." *Appellant's Br.* at 14. He further argues that the error was not cured by other instructions given, and he

was deprived of a fair trial when the jury was incorrectly instructed on voluntary manslaughter.

[14] Indiana Code section 35-42-1-3 defines voluntary manslaughter as follows:

> (a) A person who knowingly or intentionally:
>
> (1) kills another human being;
>
> . . .
>
> while acting under sudden heat commits voluntary manslaughter, a Level 2 felony.
>
> (b) The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter.

Thus, by statute, sudden heat is a mitigating factor to murder, not an element of voluntary manslaughter. *Watts v. State*, 885 N.E.2d 1228, 1231 (Ind. 2008). If a conviction for a crime requires proof of a list of elements, conviction for a lesser-included offense of that crime usually requires proof of some, but not all, of the elements of the first crime. *Coy v. State*, 999 N.E.2d 937, 943 (Ind. Ct. App. 2013).

[15] Voluntary manslaughter is different. Instead of requiring the State to prove fewer than all the elements of murder, voluntary manslaughter requires the State to prove all of the elements of murder *and* to disprove the existence of sudden heat when there is any appreciable evidence of such in the record.

*Roberson v. State*, 982 N.E.2d 452, 456 (Ind. Ct. App. 2013). A conviction for voluntary manslaughter constitutes an acquittal of murder. *Id.* "The absence of sudden heat is not an element of murder, and a jury ordinarily does not have to be instructed that the State has the burden of disproving the existence of sudden heat in order to gain a murder conviction." *Id*.

[16]  In the present case, the trial court's Instruction 21A stated:

> On occasion, either because of the nature of the crime which is charged or because of the evidence that is presented during trial, the law permits the Jury to consider whether the Defendant is guilty of certain charges that are not explicitly mentioned in the Information. These charges are called *included offenses*. They are called included offenses because they are offenses which *necessarily* must be committed as part of the charged offense because the evidence presented during trial can lead to a finding that the crime which was committed was as serious, or *less* serious, than the crime charged.
>
> If you find the Defendant not guilty of the offense charged in Count I, then you may consider whether the Defendant is guilty of the included offense.
>
> All of the instructions that I give you are to be applied to your deliberations whether you are considering a charged offense or an included offense. In other words, you may not convict the Defendant of any crime unless the State has proven the crime's applicable elements beyond a reasonable doubt.
>
> You must not look upon the included offense(s) as an opportunity to compromise differences among yourselves.

*Appellant's App. Vol. II* at 143. This instruction includes the language: "If you find the Defendant not guilty of the offense charged in Count I, then you may consider whether the Defendant is guilty of the included offense." *Id*. This instruction, which is appropriate for ordinary lesser-included offenses, is inappropriate for voluntary manslaughter.

[17] Here, however, the trial court also gave Instruction 21B, which stated:

> The crime of Murder, a felony with which the Defendant is charged in Count 1, is defined as follows:
>
> A person who knowingly or intentionally kills another human being commits Murder, a felony.
>
> Included in the charge of Murder in this case is the crime of Voluntary Manslaughter that is defined as follows:
>
> A person who knowingly or intentionally kills another human being while acting under sudden heat commits Voluntary Manslaughter, a Level 2 felony.
>
> Sudden heat is a mitigating factor that reduces what otherwise would be Murder to Voluntary Manslaughter. The State has the burden of proving beyond a reasonable doubt that the Defendant was not acting under sudden heat.
>
> To convict the Defendant of Murder, the State must prove each of the following elements beyond a reasonable doubt:
>
> 1. The Defendant, Dantez Pitts,

2. knowingly

3. killed James Bakemeier, Jr, another human being.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, but the State failed to prove beyond a reasonable doubt that the Defendant was not acting under sudden heat, you may find the Defendant guilty of Voluntary Manslaughter, a Level 2 felony, as covered under Count 1.

If the State did prove beyond a reasonable doubt that the Defendant knowingly killed James Bakemeier, Jr., and the State also did prove beyond a reasonable doubt that the Defendant acted without sudden heat, you may find the Defendant guilty of Murder, a felony, as charged in Count 1.

*Id*. at 144-45. The language in this instruction stated the proper procedure the jury should follow in analyzing the elements of the crimes of murder and of voluntary manslaughter, including any evidence of sudden heat. Therefore, any error from Instruction 21A was cured by Instruction 21B.

[18] Further, in reviewing all relevant information given to the jury, including the evidence admitted at trial, closing arguments, and the jury instructions, it is clear that the erroneous language in Instruction 21A did not have such an undeniable and substantial effect on the jury's decision that a fair trial was impossible. *See Winkleman*, 22 N.E.3d at 849. During deliberations, the jurors sent a question to the trial court asking if they could have a more thorough

definition of sudden heat, and after a discussion between the parties, the trial court decided not to give an additional instruction but instead allowed each party five minutes to educate the jury about sudden heat. The parties then proceeded to give additional argument to the jury on the concept of sudden heat and to explain how to interpret and apply that concept in the context of the present case. The jury clearly considered the concept of sudden heat and the lesser-included offense of voluntary manslaughter in its deliberations before ultimately finding Pitts guilty of murder. We, therefore, conclude that any error caused by Instruction 21A was not so prejudicial to Pitts's rights as to make a fair trial impossible. *See id*. The trial court did not commit fundamental error in instructing the jury on voluntary manslaughter.[3]

## II.    Reckless Homicide Instruction

[19]    Pitts contends that the trial court abused its discretion when it refused to give the jury an instruction on reckless homicide. In determining whether the trial court should have given an instruction for a lesser-included offense of the crime charged, this court conducts a three-part test. *Isom v. State*, 31 N.E.3d 469, 485 (Ind. 2015), *cert. denied*, 136 S. Ct. 1161 (2016). The first two parts require the trial court to consider whether the lesser-included offense is inherently or factually included in the greater offense. *Leonard v. State*, 80 N.E.3d 878, 885

---

[3] We find Pitts's reliance on *Roberson v. State*, 982 N.E.2d 452 (Ind. Ct. App. 2013) to be misplaced. In that case, which was a post-conviction case where this court found ineffective assistance of counsel for failure to point out instructional errors, the jury received not one, but three, erroneous instructions related to sudden heat and voluntary manslaughter with no additional curative instructions.

(Ind. 2017) (citing *Isom*, 31 N.E.3d at 485). If it is, then the trial court must determine if there is a serious evidentiary dispute regarding the element that distinguishes the lesser offense from the principal charge. *Id*. Here, the distinguishing element between knowing murder and reckless homicide is culpability.

[20] When considering whether there is a serious evidentiary dispute, the trial court examines the evidence presented by both parties regarding the element distinguishing the greater offense from the lesser one. *Id*. (citing *Young v. State*, 699 N.E.2d 252, 255 (Ind. 1998)). This examination "involves evaluating the 'weight and credibility of [the] evidence,' and then determining the 'seriousness of any resulting dispute.'" *Id*. (quoting *Fish v. State*, 710 N.E.2d 183, 185 (Ind. 1999)). We will reverse a trial court's finding that no serious evidentiary dispute existed only if that finding was an abuse of discretion. *Id*. In reviewing a trial court's finding, we give the trial court considerable deference, view the evidence in a light most favorable to the decision, and determine whether the trial court's decision can be justified in light of the evidence and circumstances of the case. *Id*.

[21] Pitts argues that it was an abuse of discretion for the trial court to refuse to give his tendered instruction on reckless homicide as a lesser-included offense of murder. He asserts that there was a serious evidentiary dispute regarding the distinguishing element between knowing murder and reckless homicide, which was the culpability required and whether he acted knowingly or recklessly. Pitts contends that the evidence showed that the shooting occurred immediately

after Bakemeier hit Pitts with the truck door, knocking him backward and that, when he fired the gun, he "fired wildly and indiscriminately in the direction of the truck." *Appellant's Br*. at 21. He, therefore, claims that the evidence did not preclude a reasonable possibility that he acted recklessly, rather than knowingly, and he maintains that he was deprived of a fair trial because the jury did not have an opportunity to consider if he committed reckless homicide rather than murder or voluntary manslaughter.

[22] Reckless homicide is the reckless killing of another. Ind. Code § 35-42-1-5. Murder is the intentional or knowing killing of another. Ind. Code § 35-42-1-1. Reckless homicide requires a reckless mens rea, while murder requires a knowing or intentional mens rea. *Griffin v. State*, 963 N.E.2d 685, 691 (Ind. Ct. App. 2012). The only difference between the two is the mens rea element, and therefore, reckless homicide is an inherently included offense of murder. *Id*. "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind. Code § 35-41-2-2(c). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

[23] Pitts relies on *Brown v. State*, 659 N.E.2d 652 (Ind. Ct. App. 1995), *trans. denied*, for his contention that a reckless homicide instruction should have been given. In that case, the defendant and the victim got into an argument inside a parked car, and when the defendant stepped out of the car, he pulled the victim out of

car, fired a gun twice, and hit the victim in the eye. *Id.* at 654. Immediately after shooting the victim, the defendant ran inside the victim's mother's house and screamed: "I shot her. I shot her," before fleeing the scene. *Id.* The defendant later surrendered himself to the police. *Id.* The jury found Brown guilty of voluntary manslaughter, and this court found that the trial court committed reversible error, by refusing to instruct the jury on reckless homicide, because the evidence did not preclude a reasonable possibility that the defendant acted recklessly. *Id.* at 656.

[24] We find *Brown* to be distinguishable from the present case. Here, the evidence presented at trial showed that, when Pitts was struck by the driver's side door of the truck, he immediately pulled out a gun and fired four times in the direction of the driver, Bakemeier. After shooting Bakemeier four times at close range, Pitts fled the scene and was not apprehended until approximately six weeks later when he was located in another state. Based on the evidence presented at Pitts's trial, we conclude that no serious evidentiary dispute existed regarding Pitts's culpability, and the evidence did not warrant an instruction on reckless homicide. The trial court did not abuse its discretion in refusing to give Pitts's tendered instruction on reckless homicide.

[25] Affirmed.

[26] Najam, J., and Brown, J., concur.