## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 18 2018, 9:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Clint Richardson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 18, 2018

Court of Appeals Case No.
49A04-1707-CR-1567

Appeal from the Marion Superior Court.
The Honorable Anne Flannelly, Magistrate.
Trial Court Cause No.
49G04-1608-F4-29699

**Barteau, Senior Judge**

## Statement of the Case

[1] Clint Richardson appeals the jury's determination that he is an habitual offender. We affirm.

# Issue

Richardson raises one issue, which we restate as: whether the trial court committed fundamental error while instructing the jury during the habitual offender phase of the trial.

# Facts and Procedural History

On the night of July 28, 2016, Alina Pawchareune was asleep at her rented house in Indianapolis. She was in a bedroom on the house's second floor. When Pawchareune woke up to go to the bathroom, she noted that the light was on in the hallway, which was unusual. She further noticed a box had been moved from her bedroom to the hallway. Next, she saw that the door to the attic, which the landlord had left bolted shut for the last two years, had been forced open.

Pawchareune woke up her friend Nathan and a housemate. She and Nathan approached the attic door and heard rustling noises coming from upstairs. Pawchareune loudly asked if anyone was up there, and she next saw a shirtless stranger, later identified as Richardson, walking down the attic stairs.

Nathan closed the attic door and held it shut while Pawchareune called 911. Richardson kicked the door and asked to be let out. Pawchareune and Nathan ran into a bedroom and locked the door. Pawchareune's housemate also locked himself in a bedroom. Pawchareune and Nathan soon heard someone going downstairs to the ground floor.

[6] Meanwhile, several police officers were dispatched to the house, including then-rookie Officer Thomas Thompson and his field training officer, Eric Amos. Officer Thompson approached the house's front door and looked through a large window. He saw a shirtless person, later identified as Richardson, carrying a television through the house. Officer Thompson identified himself as a police officer and ordered Richardson to put his hands up and identify himself. Instead of complying, Richardson walked into a different room, and the officers lost sight of him. They decided against entering the house, choosing to set up a cordon instead.

[7] Officer Scott Charleswood arrived separately, parking in an alley behind the house. He heard rustling from the house's backyard, so he opened a gate in the privacy fence and entered the yard. Officer Charleswood saw heavy vegetation and a small pond as he approached the house. Next, he heard the splash of footsteps in the pond. Officer Charleswood looked around and saw a shirtless person, later identified as Richardson, moving toward the rear gate.

[8] Officer Charleswood pointed a gun at Richardson and told him to stop. Richardson complied, and Officer Thompson walked to their location and put Richardson in handcuffs. Meanwhile, Officer Amos checked the house for additional suspects and informed the residents that a suspect was in custody.

[9] Richardson's pants were wet, and the officers found a television in a corner of the yard, near a wet footprint. The television belonged to Pawchareune's housemate. In addition, the officers searched Richardson and found

Pawchareune's wallet. She had previously placed it in the box that she later found in the hallway.

[10] The State charged Richardson with burglary, a Level 4 felony, and theft with a prior conviction, a Level 6 felony. The State further alleged Richardson was a habitual offender. The case was tried in three phases. During phase one, a jury determined Richardson was guilty of burglary as a Level 4 felony and was guilty of theft as a Class A misdemeanor. During phase two, Richardson waived his right to a jury trial on the issue of whether he had a predicate theft conviction. The court determined he had a predicate theft conviction and was therefore guilty of theft as a Level 6 felony. Finally, during phase three, the jury determined Richardson was a habitual offender. The court imposed a sentence, and this appeal followed.

## Discussion and Decision

[11] Richardson argues the trial court erred during the habitual offender phase of the trial by failing to instruct the jury that, pursuant to Article I, section 19 of the Indiana Constitution, jurors have the right to determine the law and the facts. He concedes he did not raise that issue during the habitual offender phase, and he asks this Court to determine that the omission of the instruction amounted to fundamental error.

[12] In general, a defendant must object to a deficiency in jury instructions, and failure to object will result in procedural default of appellate review of the issue. *Brown v. State*, 691 N.E.2d 438, 444 (Ind. 1998). An error may be fundamental,

and thus not subject to procedural default, if the error amounts to a substantial, blatant violation of basic principles. *Id.* (quotation omitted). The doctrine of fundamental error was originally designed and intended to allow only a certain category of egregious errors to be addressed on the merits on appeal despite a failure to object at trial. *Turner v. State*, 682 N.E.2d 491, 497 (Ind. 1997). The error must be substantial and blatant, and render the trial so unfair as to amount to a deprivation of defendant's right to fundamental due process. *Evans v. State*, 81 N.E.3d 634, 637 (Ind. Ct. App. 2017).

[13] In this case, during phase one of the trial the court instructed the jury, in both the preliminary and final jury instructions, as follows: "Under the Constitution of Indiana the jury has the right to determine both the law and the facts. The Court's instructions are your best source in determining the law." Appellant's App. Vol. II, pp. 127, 142.

[14] Next, during the habitual offender phase, the court and the parties discussed the final jury instructions outside the presence of the jury. The court asked Richardson if he had any proposed final instructions, and he responded that he did not. The discussion subsequently turned to the trial court's proposed Instruction Number 3, as follows:

> THE COURT: Instruction Number 3, because you are the judges of the law and the facts, even where you find that the fact of the prerequisite prior felony convictions is uncontroverted, you have the unquestioned right to find that the defendant is not an habitual offender. Any objection from the defense?
>
> [RICHARDSON]: No objection.

THE COURT:  Any objection from the State?

[THE STATE]:  That's a patterned [sic]?  Allowing them to disavow a prior conviction if they don't approve of it?

THE COURT:  I'm handed this as a - as a pattern.

[THE STATE]:  This essentially states that even if I prove my case, they have the right to decide that it - he's not an habitual offender.

THE COURT:  That's what it says.

[THE STATE]:  I would object to Instruction Number 3.

THE COURT:  Okay. I take your objection under advisement.

Tr. Vol. 2, pp. 139-40.

[15]  After discussing other instructions, the Court took a brief recess to consider Instruction Number 3.  When proceedings resumed, the Court ruled as follows:

> With respect to Court's final instructions to the jury on Phase 3, and specifically the State's objection to Instruction Number 3.  I searched the pattern instruction books and could not find that as a patterned [sic] instruction.  I suspect that it might have been used in some other trial at some point.  But it is clearly saying that even where you find its uncontroverted, you can ignore it and you can find that he's not.  And I'm going to grant the State's objection.  I'm not going to give that instruction because I don't see it as a patterned instruction.  I think it's confusing.

*Id.* at 141-42.  The court gave the parties one final opportunity to raise issues regarding the instructions, and Richardson specifically declined.

[16]  During closing argument of the habitual offender phase, Richardson told the jury as follows:  "I'm simply going to remind you that you're the jury, and you

have the power to decide. And you can go back there and deliberate and find him not guilty." *Id.* at 156.

[17] Initially, it is unclear whether the court committed an error, let alone fundamental error. The trial court correctly stated that Instruction Number 3 did not follow the pattern jury instruction. *See* Indiana Pattern Jury Instructions-Criminal, No. 1.0300 (Indiana Judges Association 2014) ("Under the Constitution of Indiana you have the right to determine both the law and the facts. The Court's/my instructions are your best source in determining the law.").

[18] In any event, any error was not fundamental. The jury had been instructed about its powers under Indiana Constitution Article I, section 19 during phase one of the trial, no more than several hours prior to the habitual offender phase. Further, Richardson reminded the jury during closing arguments of the habitual offender phase that it had the power to decide whether he was guilty or not guilty on the facts. In addition, the evidence against Richardson was thorough and consistent. We conclude the jury was sufficiently informed of the law, and any error related to Article I, section 19 did not deprive Richardson of fundamental due process. *See Clark v. State*, 561 N.E.2d 759, 764 (Ind. 1990) (failure to instruct jury about Article I section 19 powers during habitual offender phase of trial was not fundamental error; jurors were instructed on the issue during phase one of the trial).

# Conclusion

[19]     For the reasons stated above, we affirm the judgment of the trial court.

[20]     Affirmed.

May, J., and Altice, J., concur.