## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 21 2018, 8:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel C. Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert E. Young,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 21, 2018

Court of Appeals Case No.
67A04-1707-CR-1578

Appeal from the Putnam Circuit Court

The Honorable Matthew L. Headley, Judge

Trial Court Cause No.
67C01-1604-F1-75

**Crone, Judge.**

## Case Summary

[1] A jury found Robert E. Young guilty of level 3 felony aggravated battery. On appeal, he argues that the trial court committed fundamental error in instructing the jury on self-defense. We disagree and therefore affirm.

## Facts and Procedural History

[2] The relevant facts most favorable to the jury's verdict are as follows. Robert and his wife Shirley lived in rural Putnam County. The Youngs were friends with Jeffrey Perkins for over a decade until approximately 2012, when he replaced the roof on the Youngs' house. Shirley reported some leaks to Perkins, who "showed up and […] looked at it" but "never showed back up again." Tr. Vol. 4 at 21. Perkins had left some scaffolding on the Youngs' property, and Robert told him that he could get it back after he fixed the roof.

[3] Perkins did not fix the roof, and he and the Youngs did not interact again until the afternoon of March 25, 2016, when Perkins and Charles Masters went to retrieve the scaffolding. Perkins drove his flatbed truck up the Youngs' driveway and parked it by the scaffolding, which was next to a barn. Perkins and Masters began to dismantle the scaffolding. Robert came out of the barn carrying a rifle, accused them of stealing, and told them to leave. Perkins sarcastically replied that Robert "was just going to have to shoot him." Tr. Vol. 3 at 2. Robert said that the scaffolding boards belonged to him, so Perkins stacked them beside the barn and loaded the metal scaffolding frames onto the

flatbed. Robert went into the house and told Shirley to call the state police. He put a pistol in his pocket and returned to the barn to paint a vehicle that he was restoring. Shirley called the police and told Perkins and Masters to leave because they were trespassing. Robert told Shirley to block the driveway. Shirley drove her vehicle to the end of the driveway and called the police again.

[4] Robert saw that Perkins and Masters had finished loading the scaffolding frames onto the flatbed, so he parked his dump truck behind the flatbed in an attempt to block it in. Perkins put the flatbed in reverse and slowly maneuvered at "a brake controlled speed" between Robert's truck and the barn. *Id*. at 5. Masters, who was in the flatbed's passenger seat, looked out the rear window over his left shoulder and saw Robert coming out of the barn with a cinder block in his left hand and a pistol in his right hand. Masters saw Robert set the cinder block on the ground approximately fifteen feet behind the flatbed and bring the pistol up "as if he was pointing it." *Id*. at 6. Masters ducked down and heard a gunshot. The bullet from Robert's pistol shattered the flatbed's rear window and punctured Perkins's forehead. Perkins went limp. Masters put the flatbed in neutral, and it rolled to a stop against a woodpile.

[5] Indiana State Police Trooper James Crisp arrived shortly after the shooting. He drove past Shirley at the end of the driveway and encountered Robert near the barn. Robert had the pistol in his hand and said that he had "just […] shot a man." Tr. Vol. 2 at 139. Trooper Crisp asked Robert to drop the pistol and told Trooper Yan Dravigne to watch him. Trooper Crisp administered first aid

to Perkins and called for an ambulance. Perkins survived but was severely debilitated as a result of the shooting.

[6] Trooper Dravigne talked with Robert at the scene; their conversation was recorded on the trooper's in-car video camera. Robert said that he shot Perkins "in the head[,]" that he "tried to kill the stupid son of a b***h[,]" and that he "was defending [his] property and [his] life." Tr. Vol. 3 at 31. Robert claimed that he sat down on the cinder block while Perkins was backing up and "told [Perkins] hold on or I'm gonna shoot and [Perkins] speeded up" and "tried to back over [Robert] with his truck." *Id.* at 36. Robert said that he shot Perkins "just once" with the pistol and that he "probably should have emptied it but [he] still had enough sense not to know to do that." *Id.*

[7] Several hours later, Indiana State Police Sergeant Jason Fajt recorded an interview with Robert at the state police post. Robert claimed that Perkins "was trying to steal [his] property" and "run over [him] with a truck." Tr. Vol. 2 at 154. Robert said that he "would have shot up in the air just to scare [Perkins] so he would stop[,]" but the truck "kind of jarred [him] a little bit" and "[t]hat's when the gun went off." *Id.* at 167, 173. Sergeant Fajt asked Robert, "So you were willing to let [Perkins] hit you with his truck?" *Id.* at 201. Robert replied, "Correct. I want him in jail. I want him […] to be in trouble legally." *Id.* at 201-02. Sergeant Fajt also asked, "[D]id you have anywhere to avoid getting hit by the truck?" *Id.* at 202. Robert replied, "Oh might of if I'd took my hand [out of] my pocket and not had the pistol in it and bailed. Yeah, I probably could have got out of the way. Yeah." *Id.*

The State charged Robert with level 2 felony attempted voluntary manslaughter, level 3 felony aggravated battery, and three other charges that were later dismissed. Neither Robert nor Perkins testified at Robert's jury trial. The jury found Robert guilty of the aggravated battery charge but was unable to reach a verdict on the attempted manslaughter charge. The trial court declared a mistrial on the latter and sentenced Robert to eight years on the former, with one year suspended to probation. Robert now appeals. Additional facts will be provided below.

## Discussion and Decision

In his opening statement, defense counsel argued that Perkins was "the aggressor" and that Robert shot Perkins in defense of his person and property. *Id*. at 138. "Self-defense is recognized by the Indiana Code as a legal justification for the commission of an otherwise illegal act." *Carson v. State*, 686 N.E.2d 864, 867 (Ind. Ct. App. 1997), *trans. denied* (1998). Indiana Code Section 35-41-3-2 governs the use of force to protect person or property and reads in relevant part as follows:

> (c) A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person:
>
> (1) is justified in using deadly force; and
>
> (2) does not have a duty to retreat;
>
> if the person reasonably believes that that force is necessary to

prevent serious bodily injury to the person or a third person *or the commission of a forcible felony.* No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.

(Emphasis added.)

[10] When a person raises a self-defense claim based on the use of deadly force, he is required to show that he was in a place where he had a right to be, acted without fault, and had a reasonable fear of death or serious bodily harm. *Dixson v. State*, 22 N.E.3d 836, 839 (Ind. Ct. App. 2014), *trans. denied* (2015). "Once a person claims self-defense, the State bears the burden of disproving at least one of these elements beyond a reasonable doubt." *McCullough v. State*, 985 N.E.2d 1135, 1138 (Ind. Ct. App. 2013), *trans. denied*. "The State may meet this burden by rebutting the defense directly, by affirmatively showing the person did not act in self-defense, or by relying upon the sufficiency of its evidence in chief." *Id.*

[11] During the final jury instructions conference, defense counsel argued that Robert was justified in using deadly force to prevent the commission of a forcible felony.[1] The record suggests that the trial court was willing to give an instruction to this effect, but this is the instruction that the court ultimately read to the jury:

---

[1] Defense counsel tendered a preliminary instruction on self-defense, but it was not read to the jury.

It is an issue whether the Defendant acted in self-defense.

A person may use reasonable force against another person to protect himself from what he reasonable [sic] believes to be the imminent use of unlawful force.

A person is justified in using deadly force, and does not have a duty to retreat, only if he reasonable [sic] believes that deadly force is necessary to prevent serious bodily injury to himself.

However, a person may not use force if:

1. he is committing a crime that is directly and immediately connected to the confrontation; or

2. he provokes a fight with another person with intent to cause bodily injury to that person; or

3. he has willingly entered into a fight with another person or started the fight, unless he withdraws from the fight and communicates to the other person his intent to withdraw and the other person nevertheless continues or threatens to continue the fight.

The State has the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense.

Appellant's Supp. App. Vol. 2 at 15. Defense counsel did not object to the omission of the forcible felony language.[2]

---

[2] The omission appears to have been unintentional, as the court gave an instruction defining forcible felony. *See* Appellants' Supp. App. Vol. 2 at 24 ("'Forcible felony' means a felony that involves the use or threat or force against a human being, or in which there is imminent danger of bodily injury to a human being.")

[12]     On appeal, Robert argues that the trial court erred in omitting the forcible felony language from the jury instruction. He acknowledges that he failed to properly preserve the issue at trial and therefore must establish fundamental error. *See Evans v. State*, 81 N.E.3d 634, 637 (Ind. Ct. App. 2017) ("A defendant who fails to object to a jury instruction at trial waives any challenge to that instruction on appeal, unless giving the instruction was fundamental error.").

> Fundamental error is error that represents a blatant violation of basic principles rendering the trial unfair to the defendant, thereby depriving the defendant of fundamental due process. The error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. In determining whether a claimed error denies the defendant a fair trial, we consider whether the resulting harm or potential for harm is substantial. The element of harm is not shown by the fact that a defendant was ultimately convicted. Rather, it depends upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled.

*Id*. (citations omitted). We will not reverse for an instructional error where the conviction is clearly sustained by the evidence and the jury could not properly have found otherwise. *Hayden v. State*, 19 N.E.3d 831, 838 (Ind. Ct. App. 2014), *trans. denied* (2015).

[13]     During closing argument, defense counsel told the jury,

Ladies and gentlemen the Judge is going to instruct you […] that there is a crime in Indiana of battery with a deadly weapon.[3] Now again earlier we didn't hear much about the wrong doing of Jeffrey Perkins. But my client is entitled to stop a forcible felony on his property. Battery with a truck is battery with a deadly weapon. It doesn't have to hit you hard. It doesn't have to, it can just touch you. I mean battery is a rude, insolent or angry touch. So when guys are in a bar doing this, it's battery. [S]o even if it just hit him a little bit, it's a battery with a deadly weapon. That's a felony in this State.

Tr. Vol. 4 at 122.

[14] Indiana Code Section 35-41-3-2(c) provides that a person is justified in using deadly force and does not have a duty to retreat if the person reasonably believes that deadly force is necessary to prevent the commission of a forcible felony; the statute does not say that a person is justified in using deadly force if he deliberately walks into the path of a moving truck with the intention of getting hit, as Robert undisputedly did here. As the prosecutor told the jury,

[Y]ou can't be at fault. You can't cause to get in the way of something and then have a chance to get out and argue self-defense. It doesn't work that way. You will see in the instructions. [Robert] could have got out of the way. He didn't want to. He wanted to get hit.

---

[3] In fact, the trial court did not give an instruction defining battery with a deadly weapon but did give an instruction defining deadly weapon in pertinent part as "[a] destructive device, weapon, device, taser or electronic stun weapon equipment chemical substance, or other material that in the manner it; (a) is used (b) could ordinarily be used; or (c) is intended to be used; is readily capable of causing serious bodily injury." Appellant's Supp. App. Vol. 2 at 22. The court also instructed the jury that "[a]n automobile may be considered a 'deadly weapon' given appropriate circumstances." *Id*. at 23. The court did not give an instruction defining serious bodily injury.

Tr. Vol. 4 at 99. The jury was instructed that when a defendant claims that he acted in self-defense, the State must disprove beyond a reasonable doubt that he acted without fault. Appellant's Supp. App. Vol. 2 at 17.[4] We conclude that the State met that burden here. Because the jury could not properly have found that Robert was justified in using deadly force against Perkins to prevent a forcible felony, we find no fundamental error and therefore affirm his conviction.

[15] Affirmed.

Robb, J., and Bradford, J., concur.

---

[4] *Cf. Davis v. State*, 74 N.E.3d 1215, 1220-21 (Ind. Ct. App. 2017) (to establish necessity defense, defendant must show that he "did not substantially contribute to the creation of the emergency.").